WILLIAM J. ARMSTRONG, Plaintiff-Appellant, *v.* FREEMAN UNITED COAL MINING COMPANY, Division of Material Service Corp., Defendant-Appellee.

Third District No. 82—363

Opinion filed February 25, 1983.

Nile J. Williamson, of Peoria, for appellant.

Murvel Pretorius, Jr., and Karen J. Steel, both of McConnell, Kennedy, Quinn & Johnston, of Peoria, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

The appellant, William J. Armstrong, was the plaintiff named in a two-count complaint filed in the circuit court of Peoria County. Named as a defendant in that complaint was Armstrong's former employer, Freeman United Coal Mining Company. Count I of the complaint sought damages from the defendant on the theory of retaliatory discharge. Count II of the complaint sought damages from the defendant based upon alleged violations of the Illinois Human Rights Act. Fol-

lowing hearings in the court below, the circuit judge entered summary judgment for the defendant as to count I and dismissed with prejudice count II. The plaintiff appeals.

On September 9, 1975, the plaintiff was a section foreman employed at the defendant's Orient Mine No. 3 near Waltonville, Illinois. On that date, he sustained an injury in a work-related accident. As a result of his injuries, the plaintiff was unable to return to the work in which he was previously engaged, but the defendant made a sedentary position as a training instructor available for the plaintiff from December 22, 1975, until April 9, 1979. At that time, plaintiff was reclassified as a mandatory training instructor, a position which he continued to hold until he was terminated from employment on March 28, 1980. From the time of his injury until the time of his termination, the plaintiff claimed and collected temporary total disability benefits under the Workmen's Compensation Act.

Shortly more than two months after being terminated from employment, on June 5, 1980, the plaintiff filed a complaint to adjust his workmen's compensation claim arising out of the 1975 injury. It was the filing of this claim for adjustment, or at least plaintiff's intent to file such a claim, that allegedly spawned the causes of action set forth in counts I and II of the complaint in the instant action.

The tortious actions alleged in count I of plaintiff's complaint are three in number. First, the plaintiff alleges that the defendant terminated his employment because he exercised his rights under the Workmen's Compensation Act. Alternatively, the plaintiff alleges that his employment was terminated because the defendant anticipated his exercise of those same rights. Finally, the plaintiff alleges that the defendant refused to rehire or recall the plaintiff, again because he exercised his rights. In urging that these allegations are sufficient to constitute a cause of action, the plaintiff relies primarily on the recent supreme court decision in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353.

After conducting pretrial discovery, the defendant filed a motion for summary judgment as to count I. That summary judgment motion was supported by excerpts from the discovery deposition of the plaintiff. Those excerpts, which were uncontradicted and uncontroverted by any depositions or affidavits submitted by the plaintiff, disclosed the following:

a. The plaintiff did not actually file his application for adjustment of claim until June of 1980, two months after he was terminated.

b. The plaintiff never told any agent of the defendant that he was going to file a workmen's compensation action.

c. There were nine other employees terminated at the same time as the plaintiff, most of whom did not have workmen's compensation claims.

d. No agent of the defendant ever told the plaintiff why he was terminated.

e. The plaintiff believed there was a company policy that people who file workmen's compensation claims would be terminated; however, no one in a management position with the defendant ever suggested to the plaintiff that such a policy existed.

Moreover, the summary judgment motion of the defendant was supported by certain sworn testimony of its manager of training, Donald Dame. Mr. Dame's testimony reveals that the plaintiff's termination was part of a general cutback in the training section. Nine other employees were terminated at the same time. Mr. Dame made the decision as to which employees would be terminated based on their qualifications, experience, and ability to do the job.

 The plaintiff's opposition to the summary judgment motion is supported only by affidavits of co-workers who espouse an unfounded belief that a company policy of retaliatory discharge exists, yet those affidavits offer no explanation as to why that belief might reasonable be held. Thus, we conclude that no material issue of fact exists as to the defendant's intent in terminating the plaintiff's employment. It is uncontradicted by any competent affidavit that the plaintiff was terminated before filing his adjustment of claim, and that the termination was part of a general cutback in employment in the defendant's training section. Absent an intent to terminate employment in retaliation for exercise of rights under the Workmen's Compensation Act, no cause of action exists, and summary judgment was properly granted. *Cunningham v. Addressograph Multigraph Corp.* (1980), 87 Ill. App. 3d 396, 409 N.E.2d 89.

 Count II of plaintiff's complaint seeks damages for violation of the Illinois Human Rights Act (Ill. Rev. Stat. 1981, ch. 68, par. 1—101 *et seq.*). The plaintiff urges that this count sets forth a cause of action within the scope of the supreme court's decision in *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876. The *Palmateer* case recognizes a cause of action for retaliatory discharge where the employer's decision to terminate employment contravenes public policy. While the principles embodied in the Illinois Human Rights Act constitute the public policy of this State, the same act which establishes the policies also creates certain remedies where those policies are violated. Specifically, grievances under the Act come within the administrative jurisdiction of the Illinois Human Rights

Commission. (Ill. Rev. Stat. 1981, ch. 68, par. 8—103.) Except by way of administrative review, the courts of this State have no jurisdiction to grant relief for violations of the policies embodied in the Illinois Human Rights Act. (Ill. Rev. Stat. 1981, ch. 68, par. 8—111(D).) Thus, the public policy embodied in the Illinois Human Rights Act differs from the policy of promoting the efficient administration of criminal justice which concerned the court in the *Palmateer* decision, in that in the first instance, a civil cause of action has been expressly provided for by statutes, and in the latter instance, no civil cause of action existed. In light of the express statutory provision requiring the pursuit of administrative remedies under the Illinois Human Rights Act, we believe the circuit court correctly dismissed count II of plaintiff's complaint for failure to exhaust those administrative procedures.

Finally, the plaintiff urges that the trial court erred when it excused the defendant from filing verified pleadings in answer to the original complaint. The Civil Practice Act provides that where the complaint is verified, then answers subsequently filed must also be verified, "unless verification is excused by the court." (Ill. Rev. Stat. 1981, ch. 110, par. 2—605.) This is an area where the trial court has considerable discretion, and unless substantial prejudice has resulted from the exercise of that discretion, it will not be the basis for reversible error. We find from the record that the defendant properly petitioned the court to excuse verification of the pleadings, and we fail to see how the circuit court's decision resulted in any prejudice to the plaintiff. For that reason, we have sustained the decision reached by the trial judge.

In reliance on the reasoning hereinbefore set forth and the applicable precedents cited, we conclude that the judgment of the Circuit Court of Peoria County should be affirmed.

Affirmed.

STOUDER, P.J., and HEIPLE, J., concur.