ROBERT B. BARTLEY, Plaintiff-Appellant, v. UNIVERSITY ASPHALT CO., INC., *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0191

Opinion filed November 30, 1984.—Rehearing denied January 16, 1985.

MILLS, P.J., dissenting.

John H. Otto and Michael A. Owens, both of Zimmerly, Gadau, Stout, Selin & Otto, of Champaign, for appellant.

Michael O'Hara, of Springfield, for appellee International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Local Union No. 26.

D. Cameron Dobbins, of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for other appellee.

JUSTICE GREEN delivered the opinion of the court:

On April 11, 1983, plaintiff, Robert B. Bartley, brought the in-

stant suit in the circuit court of Champaign County. He charged defendant, University Asphalt Co., Inc. (University), with the tort of retaliatory discharge and defendant, International Brotherhood of Teamsters, etc., Local Union No. 26 (Teamsters), with a civil conspiracy in pursuance of the retaliatory discharge. Upon motions of the two defendants, the circuit court granted summary judgments in favor of Teamsters on November 14, 1983, and in favor of University on February 8, 1984. Plaintiff has appealed both judgments. We conclude that the record before the court at the time of the entry of the judgments did not negate the existence of all material factual questions as to the case against either defendant. Accordingly, we reverse and remand for further proceedings.

Viewed most favorably to plaintiff, the underlying facts shown by the record presented in support of the summary judgments may be stated concisely. During an undetermined time in 1979, Bartley cooperated in a Federal Bureau of Investigation (FBI) effort which was probing allegations of bribery between the two defendants in this case. His cooperation included wearing a wireless microphone through which various conversations were recorded by the FBI. At one point he was warned by the superintendent of University that "things could be hard" on employees who cooperated in the investigation no matter how it turned out. Two years later, Bartley was discharged by University.

The reason given by University for the discharge was that Bartley had refused to haul a load of asphalt as directed by his foreman. On that day, he had already worked eight hours, his wife had called his place of work and information had been given to Bartley that she needed to go to a hospital, and there were no more available loads of asphalt for him to haul despite his instructions to the contrary.

Bartley filed a grievance through the Teamsters' local. According to Bartley's affidavit, the representative of his union serving as his advocate at his grievance hearing advised him not to tell his side of the dispute with University to the grievance committee and, apparently, he did not do so. The grievance was denied. He appealed to the joint committee which Teamsters' collective bargaining committee had established as an arbitral body. That committee upheld the discharge.

The standard of review when dealing with cases decided by summary judgment is clear. As stated by our supreme court in *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500:

> "[I]f what is contained in the pleadings and affidavits would have constituted all of the evidence before the court and upon such evidence there would be nothing left to go to a jury, and

the court would be required to direct a verdict, then a summary judgment should be entered. [Citations.] More specifically, it has been held that an affidavit in support of a motion for summary judgment is actually a substitute for testimony taken in open court and should contain as much pertinent information as the affiant could competently testify to if he were sworn as a witness, [citation] and where such well alleged facts are not contradicted by counteraffidavit, they must be taken as true, notwithstanding the existence of contrary averments in the adverse party's pleadings which merely purport to establish *bona fide* issues of fact. [Citations.]''

The tort of retaliatory discharge was first recognized in this state in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, where an employee had been discharged in retaliation for filing a worker's compensation claim. In *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876, the tort was held to cover discharges in retaliation for participation by the employee in investigation by law enforcement authorities of criminal activities by co-workers. The theory adopted is that the discharge is tortious if it contravenes an important public policy. Recently, the supreme court has held that the tort includes discharge of workers subject to collective bargaining agreements as well as to those who are employees at will. (*Midgett v. Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E.2d 1280.) If supported by the facts, the remedy is appropriate to the allegations here.

■ We conclude that plaintiff's allegations against University of retaliatory discharge are sufficiently supported by the record to present a question for a trier of fact. Although two years had elapsed between plaintiff's cooperation with the FBI and his discharge, a trier of fact could reasonably infer from evidence favorable to plaintiff that University's stated reason that plaintiff was fired for disobedience was pretext, and he was actually fired for his work with the FBI. That inference would arise from the combination of the asserted threats by University that those who aided the FBI would receive retaliation, and the highly mitigating circumstances which, according to plaintiff, accompanied his refusal to haul the load of asphalt. If in fact there was no asphalt available to transport, that fact would be highly probative that defendant's discharge was retaliatory.

The situation presented here differs materially from that in *Cunningham v. Addressograph Multigraph Corp.* (1980), 87 Ill. App. 3d 396, 409 N.E.2d 89. There, an employee contended that he was discharged because his employer anticipated he would file a worker's

compensation claim. The reason stated by the employer for the discharge was that the employee had failed to follow a well-established rule of telephoning his supervisor when he was unable to come to work. A summary judgment in favor of the employer was affirmed. We do not interpret *Cunningham* to hold that the existence of a valid reason for the employer to discharge precludes proof that other reasons might have been the actual cause. There, the employee's failure to comply with the employer's order was not shown to have been accompanied by the unusual circumstances asserted by plaintiff here. There, the employer merely might have anticipated that the employee would file a worker's compensation claim. Here, plaintiff had actually aided the FBI. There, the record contained no indication of threat by the employer. Here, a person holding supervisory authority over plaintiff had assertedly threatened retaliation for aid to the FBI.

After the instant case was filed, both defendants petitioned for removal to the Federal court on grounds of Federal preemption. The case was removed but soon remanded. Inherently, the district court found that the tort recognized by the State was not preempted by a Federal contractual scheme. That court thus concluded that a Federal question was not presented. University asserts that any cause of action alleged against it has been preempted by Federal law. However, the decision of the Federal court to remand the case to the circuit court decided that question against University.

The defendant Teamsters are charged with a civil conspiracy. That involves either the accomplishment of a lawful result by unlawful means or an unlawful result by lawful means (*Panorama of Homes, Inc. v. Catholic Foreign Mission Society, Inc.* (1980), 84 Ill. App. 3d 142, 404 N.E.2d 1104). Since we have held that a factual question was presented as to whether University acted unlawfully in discharging plaintiff, a factual question would also be presented as to whether the Teamsters were liable if a factual question was presented that they conspired to create an unlawful discharge of plaintiff. That factual question was raised by the inference a trier of fact could attach to the evidence that the Teamster representative assigned to serve as advocate for plaintiff prevented plaintiff from presenting his side of the case. We conclude that a question of fact as to whether the Teamsters were liable to plaintiff was also presented by the record.

As with University's contention that plaintiff's cause of action was preempted by Federal law, that same contention by the Teamsters is decided adversely to them by the decision of the Federal court remanding the case to the State court.

The decision of the Federal court that no Federal question was

presented also preempts the Teamsters' claim that Federal law preempts the cause of action asserted against it for conspiracy.

Accordingly, we hold that the circuit court erred in granting the summary judgments. Those judgments are reversed, and the cause is remanded to the circuit court of Champaign County for further proceedings.

Reversed and remanded.

MILLER, J., concurs.

PRESIDING JUSTICE MILLS, dissenting:

I am simply unwilling to force an employer to weigh the costs of a lawsuit when coming to its decision to discharge an employee who admittedly refuses to follow the commands of a superior.

Employer here filed an affidavit in support of its motion for summary judgment which recited that the employee was discharged because he refused to follow the orders of an immediate superior. Plaintiff unabashedly agrees that he refused, but offers up various excuses which, in his opinion, should excuse his refusal. He then recalls a two-year-old matter which he feels was the real reason for his discharge.

This scenario parallels the facts in *Cunningham v. Addressograph Multigraph Corp.* (1980), 87 Ill. App. 3d 396, 409 N.E.2d 89. There, we found that one factor favoring the granting of summary judgment for a defendant employer was the employee's admission that he had violated a company policy, which violation had precipitated his discharge. The majority seeks to distinguish *Cunningham* in that the company policy there was written and well known.

In my view, it begs credulity to imagine that the policy of obeying the commands of superiors is not well known to anyone who has ever been in the work force as a lower-level employee. Further, it begs common knowledge of the everyday operations of businesses to imagine that such a policy would not ordinarily be enforced if it were not committed to writing.

The second factor cited by us in *Cunningham* was that an employee is incompetent to aver the motivation behind his discharge, absent a specific admission concerning the motivation by the employer. Here, the majority would hold that the employee's alleged cooperation with law enforcement authorities *two years* before his discharge automatically raises the possibility that his eventual discharge was retaliatory.

The practical result—which I note was foreseen by Justice Under-

wood in his dissent from the majority in *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 190, 384 N.E.2d 353, 361 (Underwood, J., dissenting)—is that the employee has, by virtue of his alleged cooperation with authorities, become virtually "fireproof" in that he may not be dismissed by the company without the threat of a lawsuit and the concomitant costs and dead weight loss of resources.

I dissent.