James HENDERSON, Plaintiff,

v.

**CLARK OIL AND REFINING CORPORATION, Defendant.**

No. 85 C 2419.

United States District Court, N.D. Illinois, E.D.

Feb. 24, 1986.

George D. Levy, Whitcup & McGrath, Ltd., Chicago, Ill., for plaintiff.

Robert D. Kreisman, Lee M. Weisz, Kreisman & Rakich, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

GRADY, Chief Judge.

This diversity case is before the court on the motion of defendant Clark Oil & Refining Corporation ("Clark") for summary judgment as to Count I of the two-count complaint of plaintiff James Henderson ("Henderson"). For the reasons stated below, we will allow Clark additional time to comply with Fed.R.Civ.P. 56(e), at which time we will enter summary judgment as to Count I and dismiss Count II for lack of subject matter jurisdiction.

## FACTS

The facts of this case are simple. In May 1981, Henderson entered into an at-will employment contract with Clark to manage a gas station owned by Clark in Skokie, Illinois. Clark terminated Henderson in March 1983. Henderson contends that Clark terminated him because he complained about selling food items, such as candies and potato chips, over-the-counter at the gas station he managed. He complained, he says, because such sales violat-

ed a Skokie ordinance.[1] In Count I of his complaint, he asks for $50,000.00 in damages for Clark's retaliatory discharge.[2] Clark contends that it fired Henderson because of his poor managerial performance and his bad attitude. Discovery was cut off on August 31, 1985.

## DISCUSSION

The long-standing rule in Illinois is that at-will employees can be terminated with or without cause. *Martin v. Federal Life Ins. Co.*, 109 Ill.App.3d 596, 65 Ill.Dec. 143, 440 N.E.2d 998 (1st Dist.1982); *Roemer v. Zurich Ins. Co.*, 25 Ill.App.3d 606, 323 N.E.2d 582 (1st Dist.1975); *Brougham v. Paul*, 138 Ill.App. 455 (1st Dist.1908). Illinois courts have carved out an exception to this rule, however, for retaliatory discharges. That is, under certain circumstances, a terminated at-will employee may bring a tort action against his or her employer for a retaliatory discharge. For example, in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), the Illinois Supreme Court held that a terminated at-will employee could bring a retaliatory discharge action against her employer who fired her because the company's policy, of which she was aware, was to terminate any employee who filed a worker's compensation claim. Noting that injured workers in Illinois had a statutory right to workers' compensation, the court said that forcing an employee to choose between retaining his or her job and filing a workers' compensation claim was "untenable and ... contrary to the public policy as expressed in the [Workers'] Compensation Act." *Id.* 23 Ill.Dec. at 563, 384 N.Ed.2d at 357. The Illinois Supreme Court has since applied this tort theory to various other situations: where an employee was discharged for supplying information to local law-enforcement officials about the possible criminal activities of a fellow employee, *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill. Dec. 13, 421 N.E.2d 876 (1981); where discharged at-will employees covered by a collective bargaining agreement filed a retaliatory discharge action without first exhausting the contract remedies set forth in their collective bargaining agreement, *Midgett v. Sackett-Chicago, Inc.*, 105 Ill.2d 143, 85 Ill.Dec. 475, 473 N.E.2d 1280 (1984); and finally to situations where an at-will employee was discharged for having filed a workers' compensation claim against a previous employer. *Darnell v. Impact Indus., Inc.*, 105 Ill.2d 158, 85 Ill.Dec. 336, 473 N.E.2d 935 (1985). Although the Illinois Supreme Court has noted that there is no definitive test for determining when an interest protected by public policy is involved, the court has concluded that "actions for retaliatory discharge have been allowed where the employee was fired for refusing to violate a statute." *Palmeteer, supra*, 52 Ill.Dec. at 16, 421 N.E.2d at 879. On the other hand, "[t]he action has not been allowed where the worker was discharged in a dispute over a company's internal management system...." *Id.* (Citations omitted).

It is not clear whether an employer is liable for retaliatory discharge under Illinois law if it terminates an employee for a reason that violates public policy as well as for a valid reason such as insubordination or poor job performance. But, it is clear that an employee-plaintiff must produce some evidence of a threat by the employer that affects public policy or some conflicting evidence about the employer's improper motivations to survive a summary judgment action. *Bartley v. University Asphalt Co., Inc.*, 129 Ill.App.3d 231, 84 Ill. Dec. 539, 472 N.E.2d 499 (4th Dist.1984); *Armstrong v. Freeman United Coal Min-*

---

1. The Skokie ordinance is attached to Henderson's complaint as Exhibit B. It states:

    Accessory uses to automobile service stations which are clearly not related to the normal servicing and repair of automobiles, excluding the operation of tobacco vending machines and Class 1, Class 2 and Class 3 food and beverage vending machines ..., shall be prohibited, excluding normal promotion activities limited to four (4) promotions per year not to exceed two (2) weeks each in duration.

2. In Count II Henderson seeks $994.80 in "unused and earned vacation pay" and $114.83 in wages allegedly due him.

*ing Co.*, 112 Ill.App.3d 1020, 68 Ill.Dec. 562, 446 N.E.2d 296 (3d Dist.1983); *Cunningham v. Addressograph Multigraph Corp.*, 87 Ill.App.3d 396, 42 Ill.Dec. 594, 409 N.E.2d 89 (4th Dist.1980). For example, in *Cunningham*, the defendant-employer terminated the plaintiff-employee claiming that the employee had breached company policy by failing to telephone the employer to inform it that he would be absent from work. The employee brought a retaliatory discharge action claiming that he was fired because the employer anticipated he would file a workers' compensation claim. The only evidence the employee produced was his affidavit in which he admitted he violated the call-in policy, but alleged that it was the employer's policy to terminate employees who filed workers' compensation claims. Refusing to consider the plaintiff's affidavit because the plaintiff could not testify under Illinois law as to the employer's state of mind, the court held there was no material issue and affirmed the trial court's entry of summary judgment in favor of the defendant.

In *Armstrong*, the plaintiff-employee brought a retaliatory discharge action alleging that he was terminated because his employer anticipated he would file an action to upwardly adjust his workers' compensation benefits. The employer maintained it fired the employee as part of a general labor cut-back. Affirming the circuit court's order granting summary judgment in favor of the employer, the appellate court noted that the plaintiff had failed to produce any evidence supporting his allegation other than affidavits of co-workers who also alleged the employer had a policy of retaliatory discharge. Conversely, the employer submitted an affidavit supporting its reason for the firing. Also, the court

noted that the employee failed to show that any agent of the employer had ever informed the plaintiff that the employer's policy was to fire workers who filed workers' compensation adjustments.

On the other hand, the court in *Bartley* reversed an order granting summary judgment in favor of an employer where the evidence showed that the plaintiff-employee was discharged two years after he cooperated with an FBI investigation into the employer's bribery practices. The plaintiff testified that the employer had warned him during the investigation that "things could be hard" for any employee who cooperated with the FBI. The employee also produced evidence that, in fact, he had not been disobedient as the company claimed. The court held that although two years had elapsed between the employer's threat and the termination, "a trier of fact could reasonably infer from evidence favorable to the plaintiff that the stated reason that plaintiff was fired for disobedience was pretext, and he was actually fired for his work with the FBI." *Bartley, supra*, 84 Ill.Dec. at 541, 472 N.E.2d at 501.

■ In the instant case, Henderson has failed to produce any evidence supporting his retaliatory discharge claim.[3] Importantly, he has not deposed any Clark agents or officials regarding their non-gas sales policies or the facts surrounding his termination. Furthermore, various admissions by Henderson indicate that the Skokie ordinance did not play a role in his firing. For example, he admitted at his deposition that neither he nor his station were ever cited or warned by a Skokie official about violating the ordinance, even though Skokie police officers visited his station on occasion.[4] Deposition of James Henderson at

---

**3.** The record indicates that Henderson attempted to discover the records of non-gas sales at Henderson's station and any records of telephone conversations between Henderson and Clark's agents regarding non-gas sales. Clark responded with an affidavit indicating that records of non-gas sales are destroyed after two years as a matter of business routine and that the requested records were destroyed in the spring of 1985, two years after Henderson was

fired. Further, the affidavit indicated that Clark did not memorialize conversations between its supervisors and service station managers about non-gas sales. The record contains no further document requests by Henderson.

**4.** The record indicates that Henderson sent deposition subpoenas to the Skokie police and public health departments requesting copies of any citations, warning notices, ordinance violation

31–33 (hereinafter cited as "Henderson Dep. at ———."). In addition, he admitted that the Clark supervisor who fired him did not mention Henderson's alleged concern about the Skokie ordinance. Henderson Dep. at 84–88. Finally, although Henderson admitted that he recorded significant events affecting his station in a diary, and that if he had a complaint about Clark he would write it in his diary, there were no diary entries reflecting his concern about the ordinance. Henderson Dep. at 49–50, 63, 103–04.

 Conversely, Clark has produced evidence that supports its contention that Henderson was fired because of his poor job performance, not his views on the Skokie ordinance. Attached to Clark's motion for summary judgment is an affidavit by Bryan Moles, Clark's district manager for the territory which included Henderson's station. According to Moles, pursuant to company policy he completed a report when Henderson was fired. That report is attached to Moles' affidavit as an exhibit and indicates that Henderson was fired because he had "a negative attitude about his job and the company." It also indicates that Henderson had failed to keep his station and its grounds clean as ordered and that "he had attitude problems about customers (paying for a soda with a $20 bill)." Although Henderson was given only one week's warning regarding the cleaning of his station and his attitude, we think defendant's evidence shows that no material fact exists and that Henderson was not fired because of his concerns that Clark was violating the Skokie ordinance. This is particularly so in light of Henderson's complete failure to come forth with any evidence to support his claim. The problem, however, is that Moles' affidavit is neither signed nor notarized, and we may not consider it under Rule 56(e). We therefore direct Clark to submit a signed and notarized affidavit of Moles, at which time we

will grant summary judgment in Clark's favor as to Count I.

## CONCLUSION

We withhold our ruling on Clark's motion for summary judgment. Clark is given until March 7, 1986, to submit a signed and notarized affidavit of Bryan Moles, at which time we will grant summary judgment in its favor as to Count I. At that time, we will also dismiss Count II for lack of subject matter jurisdiction, since it claims less than the $10,000.00 jurisdictional amount.

---

notices, internal reports and investigations, and reports of on-site investigations regarding Henderson's station. If any such documents were produced, Henderson has not tendered them to the court.