**Gerald RICHARDSON, Plaintiff,**

**v.**

**KRAFT–HOLLEB FOOD SERVICE, INC., A DIVISION OF PHILIP MORRIS, INC., Sysco Food Service, Inc., a/k/a Sysco Food Service, Chicago, Inc. and Chicago Truck Drivers, Helpers & Warehouse Worker's Union, Defendants.**

**No. 90 C 4446.**

United States District Court, N.D. Illinois, E.D.

Sept. 4, 1991.

Dennis E. Carlson, Chicago, Ill., for Gerald Richardson.

Dana D. Deane, Pope, Ballard, Shepard & Fowle, Ltd., Burton L. Reiter, for Kraft–Holleb Food Service, Inc.

Lawrence L. Summers, John D. Jeske, Vedder, Price, Kaufman & Kammholz, for Sysko Food Service, Inc.

Paul L. Glover, Vice President and Gen. Counsel, Chicago, Ill., for Chicago Truck Drivers, Helpers & Warehouse Worker's Union.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Gerald Richardson brings this two-count complaint against two former employers, Kraft–Holleb Food Service, Inc. ("Kraft–Holleb") and Sysco Food Service, Inc. ("Sysco"). Richardson also names the Chicago Truck Drivers, Helpers & Warehouse Worker's Union ("Union") as a defendant. Kraft–Holleb and the Union have filed separate motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56(b). For the reasons set forth below, we grant both motions for summary judgment.[1]

## I. SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

## II. UNDISPUTED FACTS

On May 1, 1989, Richardson injured his back during the course of his employment as a Kraft–Holleb truck driver. As a result, Kraft–Holleb immediately referred Richardson to Alexian Brothers Medical Center ("Alexian Brothers") for examination and treatment at Kraft–Holleb's expense. Richardson received treatment for his injury intermittently between May 1 and September 25, 1989. In addition, he filed a claim with the Illinois Industrial Commission for worker's compensation benefits.

On June 20, 1989, after several weeks of treatment, Dr. Magee of Alexian Brothers informed Kraft–Holleb that all tests performed on Richardson were negative, and that, if a final neurological examination likewise was negative, he would be released from medical care. Based on the subsequent neurological report of Dr. Reiss indicating no objective neurological abnormalities, Richardson was released by

---

1. In addition, we deny the Union's boilerplate request for an assessment of attorney's fees and costs against Richardson.

Alexian Brothers and instructed by Dr. Ortinau to return to work on June 26, 1989.

Despite his release from Alexian Brothers and the instruction of Dr. Ortinau, Richardson did not return to work on June 26, 1989. In a letter dated July 6, 1989, Allan A. Cassidy, District Human Resources Manager of Kraft–Holleb, informed Richardson that, unless he returned to work on or before July 10, 1989, he would be discharged from employment. Richardson, however, did not attempt to return to work until September 25, 1989. Accordingly, he was discharged from employment at Kraft–Holleb.

Throughout the relevant period of his employment at Kraft–Holleb, Richardson was a member of the Union. Between his termination from Kraft–Holleb and October 11, 1989, plaintiff engaged in several discussions with Union Steward Willie Johnson and Union Representative Gary Hickey regarding his discharge, his disability, and the filing of a grievance. Richardson thereafter submitted a grievance dated October 11, 1989, in which he asserted that his discharge violated the Union's Collective Bargaining Agreement ("CBA") with Kraft–Holleb.

Union representatives discussed Richardson's grievance with Kraft–Holleb representatives on several occasions. Kraft–Holleb denied the grievance by letter to Hickey dated October 18, 1989. On October 27, 1989, Kraft–Holleb representatives Cassidy, Ed Knauss and Rich Rothrock met with Union representatives Hickey and Larry Greenfield to discuss the grievance in accordance with the next steps of the grievance procedure enumerated in the CBA. During this meeting, Kraft–Holleb

again denied Richardson's grievance. At the request of the Union, Kraft–Holleb provided to the Union documentation regarding Richardson's medical treatment and his failure to return to work.

On December 11, 12 and 18, 1989, Cassidy and Hickey further discussed Richardson's grievance without resolution. As a result, Union Vice President and General Counsel Paul Glover requested that Richardson schedule a "pre-arbitration meeting" with Glover so that the Union could prepare to process further his grievance. Richardson met with Glover on two occasions in January 1990 to discuss the merits of Richardson's grievance. To aid in his decision of whether to pursue the grievance, Glover engaged an independent arbitrator, Edward Steadman, to review its merits. Steadman issued a written opinion on January 31, 1990, in which he concluded that Kraft–Holleb's termination of Richardson was appropriate and he recommended against the Union taking his grievance to arbitration. Armed with this independent assessment of the low probability of success on the merits, the Union decided not to appeal Richardson's grievance to arbitration.

## III. DISCUSSION

Richardson presents three claims to this court. Count I, encompassing the first two claims, alleges violations of § 301 of the National Labor Management Relations Act ("NLRA"), 29 U.S.C. § 185.[2] Richardson contends that the Union breached its duty to provide him with fair representation, and he argues that Kraft–Holleb violated its CBA with the Union by discharging him.[3]

---

2. Section 301 provides in pertinent part:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1978).

3. Kraft–Holleb argues that Count I of Richardson's complaint only alleges that the Union

breached a duty owed to plaintiff pursuant to § 301, and not that Kraft–Holleb either breached the CBA or violated § 301. Although the complaint in this case is not particularly well pleaded, we do not believe it can be read so narrowly. Richardson specifically alleges that a CBA was in force between the Union and Kraft–Holleb, and that he was "[d]ischarged ... for claiming or filing for Worker's Compensation benefits and/or for filing a grievance in the manner alleged ... [and] for having sustained a covered injury." Complaint ¶ 8 (Count I). Moreover, Richardson's complaint demands judgment against *all* defendants. This short

Finally, Count II of Richardson's complaint asserts against Kraft–Holleb a claim for retaliatory discharge in violation of Illinois tort law and "the public policy of the State of Illinois."[4] Each of these claims will be considered in turn.

### A. The Union's Duty of Fair Representation

■ Richardson's claim that the Union breached its duty of fair representation stems solely from the fact that Glover refused to process Richardson's grievance to arbitration. The Union, however, is under no duty to arbitrate every grievance. *Vaca v. Sipes*, 386 U.S. 171, 191–92, 87 S.Ct. 903, 917–18, 17 L.Ed.2d 842 (1967); *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1196 (7th Cir.1990); *see also Graf v. Elgin, J. & E.R. Co.*, 697 F.2d 771, 779 (7th Cir.1983) ("A union is not required to prosecute a grievance that it honestly believes lacks merit.").

The tripartite standard that governs a claim that a union has breached its duty of fair representation was announced by the United States Supreme Court in *Vaca v. Sipes*, 386 U.S. at 190, 87 S.Ct. at 916: "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." This rule was recently reaffirmed by the Court in *Air Line Pilots Ass'n, Int'l v. O'Neill*, — U.S. —, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).

■ The Seventh Circuit has interpreted this standard quite narrowly. In *Hoffman v. Lonza, Inc.*, 658 F.2d 519, 522–23 (7th Cir.1981), the court held that a union breaches its duty to fairly represent a worker if it deliberately and unjustifiably refuses to represent that worker in processing a grievance: "The duty is not

breached and the employee has no remedy without substantial evidence of fraud, deceitful action or dishonest conduct." *See also Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1244 (7th Cir.1990); *Superczynski v. P.T.O. Servs., Inc.*, 706 F.2d 200, 202 (7th Cir.1983). Thus, "arbitrary, discriminatory, or bad faith" conduct is synonymous with intentional misconduct, and as a consequence, our focus is on "'motive rather than result.'" *Martin*, 911 F.2d at 1248 (quoting *Camacho v. Ritz–Carlton Water Tower*, 786 F.2d 242, 244 (7th Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3282, 91 L.Ed.2d 571 (1986)).

■ While resolution by summary judgment is generally inappropriate where questions of motive and intent are in dispute, once the Union "has sufficiently demonstrated factual circumstances which belie the claim that its conduct was improperly motivated and the disgruntled employee has not come forward with sufficient evidence from which a reasonable jury could infer an [unseemly intent], the Court need not concern itself with speculated questions of witness credibility." *Mercil v. Federal Express Corp.*, 664 F.Supp. 315, 320 (N.D.Ill.1987) (citing *Klein v. Trustees of Indiana Univ.*, 766 F.2d 275, 282 (7th Cir. 1985), and *Armstrong v. Freeman United Coal Mining Co.*, 112 Ill.App.3d 1020, 1021–22, 68 Ill.Dec. 562, 563–64, 446 N.E.2d 296, 297–98 (3d Dist.1983)).

■ Richardson, in an attempt to characterize the Union's refusal to arbitrate his grievance as "arbitrary, discriminatory, and in bad faith," points to only three pieces of evidence, none of which indicate improper motivation. First, he argues that the Union's use of Arbitrator Steadman constitutes a "nonauthorized procedure." Richardson, however, has failed to point to

---

and plain statement of the claim, coupled with Richardson's demand for judgment for the relief sought, is sufficient to set forth a claim against Kraft–Holleb. *See* Fed.R.Civ.P. 8(a).

**4.** Although the court's jurisdiction over this state-law claim is not presently in dispute, once again Richardson's briefs evince bewilderment about jurisdiction in federal courts. As we have previously noted, there has been no showing that the parties are diverse in the diversity juris-

diction sense. *Richardson v. Kraft–Holleb Food Serv., Inc.*, 753 F.Supp. 233, 236–37 n. 6 (N.D.Ill. 1990). Instead, as the state tort claim is "so related to" the § 301/fair representation claim that they form part of the same case or controversy under Article III of the United States Constitution, the court's jurisdiction properly is based upon the doctrine of supplemental jurisdiction. *See* 28 U.S.C. § 1367 (Supp.1991).

any source requiring authorization on the part of the Union to obtain a pre-arbitration review on the merits of a grievance. That the Union went to the time and expense to engage Arbitrator Steadman to review Richardson's grievance, without any requirement that it do so, could not be construed by any reasonable jury as evidence of improper motive. To the contrary, such effort reveals nothing more than the Union's desire to assure that the grievances it processes to arbitration have some probability of success on the merits.

Second, Richardson claims that the Union's improper motivation is evinced by Glover's erroneous statement to this court that Richardson admitted he was able to return to work on June 26, 1989, but chose not to return. However, even accepting the truth of Richardson's contention, no reasonable jury could conclude that Glover's current mistaken belief affected the Union's earlier handling of the grievance. Furthermore, to the extent that Richardson's claim represents dissatisfaction with the Union's assessment of the merits of his grievance, that dissatisfaction is insufficient to survive summary judgment.

Finally, Richardson asserts that disagreement among Union officials on the merits of his grievance reveals the arbitrary, discriminatory, and bad faith nature of the Union's refusal to arbitrate the grievance. There is no dispute that Glover has final authority to determine which grievances to arbitrate. The fact that his assessment of the merits of Richardson's grievance differed from Field Representative Hickey's evaluation provides no evidence to infer improper motivation by the Union. Rather, a disagreement on the merits reveals nothing more than the good faith consideration of Richardson's grievance.

In sum, Richardson has failed to present any evidence, direct or circumstantial, from which a reasonable jury could conclude that the Union acted in an arbitrary, discriminatory, or bad faith manner. Significantly, there is no evidence of personal enmity between Richardson and the Union. Nor has Richardson set forth evidence of any political motivation for the Union's decision not to arbitrate his grievance. Thus, in the absence of a genuine issue of material fact, we find it appropriate to enter summary judgment in favor of the Union.

**B. The Collective Bargaining Agreement**

■ Richardson's second claim, brought pursuant to § 301 of the NLRA, requires less discussion. Richardson contends that Kraft–Holleb violated its CBA with the Union by discharging him. It is well established, however, that "[w]hen a union has exclusive power under a collective bargaining agreement to invoke the grievance process, an employee may pursue an individual claim *only if* his union wrongfully refuses to process the claim." *Dahnke,* 906 F.2d at 1198 (emphasis in original); *see also United Parcel Serv., Inc. v. Mitchell,* 451 U.S. 56, 62, 101 S.Ct. 1559, 1563–64, 67 L.Ed.2d 732 (1981) (a showing that the union breached its duty of fair representation is an indispensable predicate for a § 301 suit brought by an employee against his employer for breach of the CBA); *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976); *Freeman v. Local Union No. 135,* 746 F.2d 1316, 1321 (7th Cir.1984). Since we have concluded that the Union did not wrongfully refuse to arbitrate Richardson's claim, Richardson may not pursue his claim for wrongful discharge under § 301 of the NLRA.[5]

**C. The Tort of Retaliatory Discharge**

■ Richardson's final contention is that Kraft–Holleb is liable under the Illinois common law tort of retaliatory discharge, first recognized by the Illinois Supreme

---

5. Richardson also claims that the Union is liable under § 301 for the breach of the CBA by Kraft–Holleb. He contends that the Union "has complicity in plaintiff's discharge ... by Kraft." This argument, however, is deeply flawed. First, as a matter of procedure, Richardson has failed to plead this claim in his complaint. Moreover, assuming such a claim could be maintained under § 301, Richardson has offered no facts to support this wild accusation. Finally, he has failed to establish a breach by the Union of its duty of fair representation, a prerequisite to any § 301 action.

Court in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). Richardson claims that Kraft–Holleb discharged him in retaliation for asserting his rights under the Illinois Workers' Compensation Act.[6]

Recovery for the tort of retaliatory discharge requires proof that (1) plaintiff was discharged from employment; (2) in retaliation for his activities; and (3) the discharge violates a clear public policy. *Washburn v. IBP, Inc.*, 910 F.2d 372, 373 (7th Cir.1990); *Mercil v. Federal Express Corp.*, 664 F.Supp. 315, 317 (N.D.Ill.1987); *Barr v. Kelso–Burnett Co.*, 106 Ill.2d 520, 527, 88 Ill.Dec. 628, 632, 478 N.E.2d 1354, 1358 (1985).

There is no dispute that Richardson was discharged from employment by Kraft–Holleb. Further, the Illinois courts have recognized a cause of action when a plaintiff is discharged in retaliation for filing a claim for workers' compensation. *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58 (7th Cir.1990) (interpreting Illinois law); *Kelsay*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353. At issue in this case is the evidence of causation, that is, the extent to which Richardson can prove that Kraft–Holleb had a retaliatory motive for firing him. The causation element is not met if the employer has a valid basis, which is not a pretext, for discharging the plaintiff. *Mercil*, 664 F.Supp. at 317 (citing *Slover v. Brown*, 140 Ill.App.3d 618, 620–21, 94 Ill. Dec. 856, 858, 488 N.E.2d 1103, 1105 (5th Dist.1986)).

The entirety of Richardson's evidence presented to support his claim of retaliatory discharge can be summarized as follows: (1) Al Cassidy, Human Resource Director of Kraft–Holleb, erroneously concluded that Richardson was able to return to work on June 26, 1989, notwithstanding Dr. Ortinau's opinion to the contrary; and (2) the proximity of the termination and the filing of the claim for benefits displays Kraft–Holleb's culpable motive.

Even assuming the truth of his first assertion, no reasonable jury could sustain a verdict in Richardson's favor. Under Illinois law, an employer may act on the basis of its employees' physical disabilities. The limit concerning the grounds for termination is drawn at the request for benefits, not physical impairment. For example, the plaintiff in *Slover*, 140 Ill.App.3d 618, 94 Ill.Dec. 856, 488 N.E.2d 1103, was injured in the course of employment, and, while he was unable to perform his job, he was laid off and replaced. After his recovery, his employer refused to reinstate him. The court concluded: "Causality does not exist if the basis for discharge is valid and nonpretextual. Thus, an employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury." *Id.* at 621, 94 Ill.Dec. at 858, 488 N.E.2d at 1105 (citations omitted); *see also McEwen*, 919 F.2d at 60–61; *Marin v. American Meat Packing Co.*, 204 Ill. App.3d 302, 149 Ill.Dec. 818, 562 N.E.2d 282 (1st Dist.1990).

Thus, the inference to be drawn from the proximity of the termination and the claim for benefits is all that stands between Richardson and summary judgment. On May 24, 1989, the Illinois Industrial Commission issued a Notice of Hearing indicating that Richardson's claim for benefits had been filed with that agency. According to Kraft–Holleb, Richardson was terminated on June 26, 1989, the date he failed to return to work.[7] Without more, however, we conclude that no reasonable jury could infer that Richardson's termination was improperly motivated. To the contrary, Richardson concedes that he was given a second chance to report to work on or before July 10, 1989. His failure to report back to work until September 25, 1989, indicates either (1) that Richardson was lackadaisical, or (2) that he actually was unable to perform his job. As both circumstances provide an employer with legitimate grounds for discharge, neither standing alone constitute evidence from which a re-

---

6. Ill.Rev.Stat. ch. 48, ¶¶ 138.1–138.30 (1989).

7. Although Richardson disputes this date, claiming he was terminated by Cassidy's letter dated July 6, 1989, we will assume that he was in fact terminated on June 26, 1989, as this date is most favorable to Richardson's proximity theory.

taliatory intent reasonably may be inferred. Therefore, no genuine issue of material fact exists to support Richardson's claim under the Illinois tort of retaliatory discharge.

## IV. CONCLUSION

There is no genuine issue of material fact to support Richardson's claim that the Union breached its duty of fair representation, a prerequisite to any claim brought pursuant to § 301 of the NLRA. Moreover, Richardson has failed to provide this court with any facts from which a reasonable jury could conclude that Kraft–Holleb terminated him in retaliation for his asserted right to workers' compensation benefits. Accordingly, we enter summary judgment, pursuant to Fed.R.Civ.P. 56(c), in favor of both the Union and Kraft–Holleb. It is so ordered.