**William R. MERCIL, Plaintiff,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant.**

**No. 83 C 4593.**

United States District Court, N.D. Illinois, E.D.

Feb. 4, 1987.

John D. Knightlinger, Meinhardt & Knightlinger, Arlington Heights, Ill., for plaintiff.

Roger L. Taylor, Kirkland & Ellis, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

William Mercil was an at-will employee of defendant Federal Express Corporation

("Federal") until he was discharged on December 14, 1982, purportedly for violating a company policy against the falsification of company documents. He filed this diversity action for retaliatory discharge against Federal claiming that his firing was actually in retaliation for a workers' compensation claim for permanent disability benefits which he was planning to file at the time of his dismissal. Federal now moves for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons that follow, Federal's motion is granted.

## I. FACTUAL BACKGROUND

The following facts are essentially undisputed. Mercil was employed by Federal as a sorter and then a delivery driver on an at-will basis from February 1975 until December 1982. On December 9, 1982, Mercil delivered a letter to a customer who was not at home. Although it was stated in various Federal procedure manuals that packages and letters should not be left without first obtaining the signature of the recipient, Mercil printed the recipient's name in the signature column of the delivery record and left the package unattended. The letter was temporarily lost, and Federal received a formal complaint from the recipient. Following an inquiry into this incident, Mercil's manager at Federal, Ron Foster, fired Mercil on December 14, 1982. Mercil applied for relief through Federal's "Guaranteed Fair Treatment Procedure" ("GFTP"), an internal appeal process, but was unsuccessful in his quest to be reinstated. The final step of the GFTP through which Mercil pursued his claim was completed on February 2, 1983, when the Appeals Board at Federal upheld the decision to fire him. None of the written materials submitted to Federal by Mercil during the GFTP indicated that he intended to file a permanent disability claim, nor did Mercil orally inform any of the Federal employees involved in the GFTP review process of his intention.

Approximately one year earlier, in November 1981, Mercil had incurred an injury to his left arm and requested payment from Federal for the related medical expenses and lost pay during his recovery. Federal paid these benefits to Mercil, although it is disputed whether it did so of its own volition or as a result of Mercil's threat of legal action. The same injury continued to cause problems for Mercil, and he had scheduled himself for corrective surgery for December 20, 1982. On February 28, 1983, following his discharge, Mercil filed a workers' compensation claim for permanent disability benefits in connection with his arm injury, and Federal issued a check to him for this injury in May of that year.

## II. SUMMARY JUDGMENT

In order to prevail, the moving party in a summary judgment motion under Fed.R. Civ.P. 56 must demonstrate that there is no genuine issue of material fact such that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of clearly establishing the absence of a triable fact issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). To successfully counter the motion, the non-moving party must indicate that there is sufficient evidence in the record from which a reasonable jury could return a verdict for him. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Mercil brings this action under the Illinois common law tort of retaliatory discharge, first recognized by the Illinois Supreme Court in *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). In *Kelsay*, the court held that at-will employees could maintain a cause of action against their employers if they were fired in retaliation for asserting their rights under the Illinois Workers' Compensation Act.[1] *Id.* at 181, 23 Ill.Dec. at 563, 384 N.E.2d at 357. The court expanded the tort in *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 129–30, 52 Ill.Dec. 13, 15, 421 N.E.2d 876, 878 (1981), to encompass protection from all employee ter-

1. Ill.Rev.Stat. ch. 48, ¶¶ 138.1–138.30 (1985).

minations contrary to public policy. Thus, the court has altered the customary at-will employment relationship to mean that while an at-will employee may be fired for good reason or for no reason at all, he or she may not be fired for a reason which would contravene public policy, such as coercive discouragement from asserting rights under the workers' compensation statute. *Id.* at 128, 52 Ill.Dec. at 15, 421 N.E.2d at 878.

A retaliatory discharge claim requires the following elements. First, the plaintiff must have been an employee of the defendant before the injury occurred. Second, the plaintiff must have exercised or threatened to exercise a right granted by the workers' compensation act. Finally, the plaintiff's termination must have been causally related to his or her filing of a claim or statement of intent to file a claim under the act. *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1356 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986); *Slover v. Brown,* 140 Ill.App.3d 618, 620–21, 94 Ill.Dec. 856, 858, 488 N.E.2d 1103, 1105 (5th Dist.1986).

■ The causation element is not met if the employer has a valid basis, which is not a pretext, for discharging the plaintiff. *Slover,* 140 Ill.App.3d at 620–21, 94 Ill.Dec. at 858, 488 N.E.2d at 1105. We note, however, that because an at-will employee may properly be fired for no reason at all, *Palmeteer,* 85 Ill.2d at 128, 52 Ill.Dec. at 15, 421 N.E.2d at 878, the employer need not tender a legitimate reason for the termination if the employee has not proved, or at least presented a prima facie case, that he or she was fired in retaliation for asserting workers' compensation act rights.

The primary dispute in this case concerns the evidence of causation, that is, the extent to which Mercil can prove that Federal had a retaliatory motive for firing him. Causation is relevant to both of Mercil's proposed theories of recovery which we address below.

### A. *Retaliation For Past Disability Payments*

Mercil's first theory of recovery is that he was terminated because he sought and received past payments from Federal for his initial arm injury in late 1981 and early 1982. He testified at his deposition that Federal demonstrated hostility and resistance to paying any disability benefits at that time and that the company only relented when Mercil threatened legal action to enforce his rights. Deposition of William R. Mercil ("Mercil Dep.") at 51–55, 222–24. Federal denies that it was ever intransigent in dealing with Mercil's requests for payment of medical bills and lost pay during this period of temporary disablement.

■ The problem with Mercil's claim is that, while he alleges facts regarding the past receipt of benefits, he never pleads in his second amended complaint that his firing was motivated by this incident. In denying Federal's earlier summary judgment motion, Judge John F. Grady, to whom this case was previously assigned, stated:

> As the [first] amended complaint stands now, plaintiff is claiming only that his discharge was motivated by his possible *future* workmen's compensation claim. If plaintiff now wants to claim that his discharge was based on his *past* receipt of benefits and his looming surgery, and that a discharge so motivated is actionable under Illinois law, then he should move to amend his claim to include such an allegation.

*Mercil v. Federal Express Corp.,* No. 83 C 4593, slip op. at 3 (N.D.Ill. April 29, 1986) [Available on WESTLAW, DCT database] (emphasis added). Pursuant to Judge Grady's invitation, Mercil amended his complaint, but his new complaint still does not plead that he was fired as a result of his past receipt of benefits. In fact, Mercil's second amended complaint substantially mirrors his first amended complaint in that he specifically pleads that he was "finally terminated ... in retaliation for the *contemplated* Workmen's Compensation Claim." Plaintiff's Second Amended Complaint, ¶ 26 (emphasis added). It is not this Court's responsibility to correct the pleading errors of a plaintiff who has already had opportunities to make such corrections

himself, especially where the specific theory of relief has already been flagged for him by another district court judge. Accordingly, we allow Federal's summary judgment motion on Mercil's retaliatory discharge complaint with respect to Federal's alleged motive of retaliation for pursuing past benefit claims.

### B. *Retaliation For Contemplated Permanent Disability Claims*

Mercil's primary theory of recovery is that he was discharged by Federal in anticipation of his pending surgery and his contemplated workers' compensation claim for permanent disability benefits. He contends that there is sufficient evidence supporting this theory for his action to survive Federal's summary judgment motion. Specifically, he argues that there is evidence that (1) Federal's policy was not regularly enforced, thus raising the inference that Federal used the delivery incident as a convenient excuse to oust Mercil from the company; (2) Federal knew and was not pleased with Mercil's upcoming surgery and fired him rather than deal with any extended work leave; and (3) despite the fact that none of the relevant company officials were aware of Mercil's contemplated workers' compensation claim, other evidence supports a reasonable inference that he was fired in retaliation for this claim.

With regard to the company policy, Mercil proposes that other employees who printed package recipients' names in the signature part of the delivery record had been disciplined, but not fired, or reinstated through the GFTP after an initial termination. *See* Affidavit of Robert W. Hillenburg, ¶¶ 3–5; Mercil Dep. at 185–86. He also contends that in past deliveries to the same customer he executed, without incident, the same procedure for which he was allegedly fired, Mercil Dep. at 186–88, and that he had arranged this delivery procedure with the recipient's consent prior to the delivery on December 9th. Furthermore, he argues that he was unaware of the company policy against such a procedure. He contends that this evidence supports a reasonable inference that Federal's

purported reason for firing him was a pretext for the real reason, which was to punish him for exercising his rights under the workers' compensation law.

In response, Federal has submitted copies of its personnel policy and procedure manual and its employee handbook which both indicate that an employee may be dismissed following an investigation confirming that he or she has falsified a company-related document. Affidavit of Thomas C. McGarry, Exhs. C, D. Furthermore, Federal's Ground Operations Policy and Procedure Manual clearly states that it is company policy not to release a package until a legal signature has been obtained or until a receipt number, release number or release signature on the Delivery Notice has been entered. McGarry Aff., Exh. B. Mercil denies that his version of these manuals contained these requirements. Federal also sets forth evidence that these policies were repeatedly discussed at morning meetings which Mercil must have attended during his tenure as a delivery driver. McGarry Aff., Exh. E.

Based on the record compiled in this case, there appears to be a genuine issue of fact regarding Mercil's awareness of the Federal policy against delivery record falsification, although there is no factual dispute that he violated the policy as written. Nonetheless, Federal need not prove a "good" reason for dismissing Mercil, an at-will employee, unless Mercil has initially set forth sufficient evidence from which a reasonable jury could infer that his termination was wrongfully motivated. Because we find below that he has not done so, the dispute concerning Mercil's knowledge of the delivery policy is not material.

Mercil also argues that Federal knew of his pending surgery, and that it was concerned that an extended absence would result from that procedure. We note that as a matter of Illinois law, an at-will employee may be properly discharged as a result of an injury which would prevent him from performing his job for a lengthy period. *Slover v. Brown*, 140 Ill.App.3d 618, 621, 94 Ill.Dec. 856, 858, 488 N.E.2d 1103, 1105 (5th Dist.1986). Furthermore, there is lit-

tle evidence indicating that the relevant company officials were aware of Mercil's upcoming surgery. *See* Mercil Dep. at 33. Accordingly, this contention cannot afford Mercil any relief within the scope of a retaliatory discharge action.

■ Next, Federal contends that only one of its employees, Ron Kress, knew of Mercil's intention to file a permanent disability claim, and that Kress did not take part in the decision to fire Mercil nor did he inform anyone else in the company of Mercil's plans. Affidavit of Ronald Kress, ¶ 8. In support of its defense that none of its employees involved in deciding that Mercil should be fired was aware of his contemplated disability claim, Federal has submitted the affidavits of Ron Foster, Mercil's manager and the employee who actually fired Mercil, as well as those of all Federal employees who participated in the GFTP review of Mercil's discharge. *See* Affidavit of Ron Foster, ¶ 9; Affidavit of F.A. Manske, Jr., ¶ 5; McGarry Aff., ¶ 9; Affidavit of James A. Perkins, ¶ 6; Affidavit of Judith A. Rogala, ¶ 6; Affidavit of Frederick W. Smith, ¶ 13; Affidavit of Peter S. Willmott, ¶ 8.

There is really no dispute that none of the employees charged with the responsibility of terminating Mercil or reviewing his dismissal were informed that he was planning to file a permanent disability claim under the workers' compensation act until after the GFTP was completed.[2] Mercil Dep. at 237. Factual support that the employer was informed or in some way found out about the plaintiff's pursuit of remedies under the workers' compensation act is essential to a retaliatory discharge action. *See Burgess v. Chicago Sun-Times*, 132 Ill.App.3d 181, 185, 87 Ill.Dec. 292, 295, 476 N.E.2d 1284, 1287 (1st Dist.1985). Thus,

Mercil would be hard pressed to prove that the motivating factor underlying Federal's decision to terminate him was his intent to file a workers' compensation claim. Nevertheless, he argues that other evidence in the record, read in the light most favorable to him, supports a reasonable inference that would sustain a jury finding that he was the victim of a retaliatory discharge. We disagree.

■ The only evidence that Mercil can proffer after extensive discovery is (1) the timing of his departure from the company, which was coincidentally shortly before his scheduled surgery and (2) some written statements in Mercil's workers' compensation file at Federal. In our view, this evidence is not sufficient to overcome the undisputed proposition that the relevant Federal employees were unaware of Mercil's contemplated claim. The facts related to the timing of Mercil's dismissal, even read in the light most favorable to him, lend only weak circumstantial support to his retaliatory discharge claim. No reasonable jury reviewing the other evidence in this case could find that the coincidental timing would overcome the strong support offered by Federal.

The same is true with the evidence of written statements in Mercil's workers' compensation file. Specifically, Mercil points to two statements entered in that file by Terry L. Varner, a Federal Claims Administrator, and his assistant, Lisa Bartlett. These statements, which refer to Mercil, were "Let's watch claim & see if he pursues," entered by Varner, and "Find out why terminated—per Al—make sure there is good reason," entered by Bartlett. It is undisputed that this form was filled out on December 15, 1982, after Mercil's dismissal but before the GFTP was com-

---

**2.** Judge Grady's earlier opinion in this case authorized Mercil to amend his complaint to plead that there was a retaliatory motive for not rehiring or reinstating him during the GFTP. This theory of relief for Mercil is undermined because there is no dispute that Mercil did not file his workers' compensation claim for permanent disability until *after* the GFTP was completed, and that throughout the entire process, Kress was the only Federal employee who knew about Mercil's intent to file that claim. As stated in the body of this opinion, Kress took no part in

the decision to fire Mercil or in the GFTP. Accordingly, it would not be any more reasonable to infer that Federal's motive to deny reinstatement to Mercil was based on Mercil's contemplated claim that it would be to infer that its motive to fire him in the first place was so tainted. The same logic applies to rebut Mercil's argument that he was not actually "terminated" until the GFTP was completed, twenty-six days *before* he filed his workers' compensation claim.

pleted. These recorded statements, Mercil contends, sustain a reasonable inference that Federal was aware of his contemplated claim during the GFTP. Although the "claim" reference on the form is ambiguous and never refers to a contemplated permanent disability claim, we read it in the light most favorable to Mercil as a reference to his contemplated claim. Nevertheless, Mercil offers absolutely no evidence linking these statements to the GFTP or to any of the company officials responsible for his employment termination. On the contrary, Varner has sworn that this file never left the risk management department, that he was not consulted nor did he play any role in Mercil's firing or the subsequent GFTP, and that he never informed any of the relevant officials of any information contained in Mercil's file. Affidavit of Terry L. Varner, ¶¶ 6–8. Furthermore, the statements themselves are ambiguous, and even read in the light most favorable to Mercil, do not provide enough support for Mercil's claim to survive summary judgment in light of the overwhelming opposition evidence.[3] Moreover, Varner set forth legitimate reasons why he was keeping track of Federal's potential insurance liability to a former employee from the company reserve fund. Varner Aff., ¶ 5. Thus, we conclude that Mercil has not succeeded in representing to this Court that there is sufficient evidence of retaliatory motivation such that a reasonable jury could return a verdict in his favor, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, (1986), and, therefore, no genuine issue of material fact.

Mercil's final argument in opposing Federal's summary judgment motion is that where questions of motive and intent are in dispute, resolution by summary judgment is particularly inappropriate. While Mercil is correct in stating the general rule, he cannot survive Federal's motion in the present case. Where an employer has sufficiently demonstrated factual circumstances which belie the claim that its conduct was improperly motivated and the disgruntled employee has not come forward with sufficient evidence from which a reasonable jury could infer a retaliatory discharge, the Court need not concern itself with speculated questions of witness credibility. *See, e.g., Klein v. Trustees of Indiana University*, 766 F.2d 275, 282 (7th Cir.1985) (summary judgment on retaliatory discharge claim under Title VII); *Armstrong v. Freeman United Coal Mining Co.*, 112 Ill.App.3d 1020, 1021–22, 68 Ill.Dec. 562, 563–64, 446 N.E.2d 296, 297–98 (3d Dist.1983).

### III. CONCLUSION

There are no genuine issues of material fact; as a result, Federal is entitled to judgment as a matter of law that Mercil was not fired in retaliation for his contemplated workers' compensation claim. Accordingly, we find it appropriate to enter summary judgment in favor of Federal pursuant to Fed.R.Civ.P. 56(c). It is so ordered.

---

**3.** We emphasize here that in ruling on Federal's summary judgment motion we are not weighing the evidence presented, but are simply reviewing whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).