**George S. CANNELLA, Jr., Plaintiff,**

v.

**NATIONWIDE CARRIERS, INC., Defendant.**

**No. 86 C 10294.**

United States District Court, N.D. Illinois, E.D.

April 29, 1988.

James E. Beckley, Christopher J. Barber, Marsha A. Tolchin, Leo G. Aubel, James E. Beckley & Assoc., Chicago, Ill., for plaintiff.

Arthur L. Klein, Susan Margaret Vance, Arnstein, Gluck, Lehr & Milligan, Chicago, Ill., for defendant.

**MEMORANDUM OPINION AND ORDER**

PLUNKETT, District Judge.

Plaintiff George Cannella brought suit in the Circuit Court of Cook County against his former employer, Defendant Nationwide Carriers, Inc. Defendant removed the action to this court. We have jurisdic-

tion based on diversity of citizenship. Plaintiff's complaint originally contained three counts. Only Count I now remains, for we granted Plaintiff's motion to voluntarily dismiss Counts II and III on November 30, 1987. Defendant now moves for summary judgment on Count I, which alleges that Plaintiff was discharged by Defendant in retaliation for his stated intent to file a claim under the Illinois Worker's Compensation Act. For the reason set forth below, the motion is granted.

### Facts

The broad outlines of Cannella's employment history are as follows. He was hired by Nationwide, a trucking company, in 1980. Approximately one year later, he was named manager of Nationwide's Chicago terminal. As manager, he was in charge of coordinating the operations of the Chicago terminal with Nationwide's operations in other parts of the country. He provided dispatch information to Nationwide's central dispatch office in Maple Plains, Minnesota, and was responsible for scheduling drivers, making load and truck assignments, and accounting for trucks in the Chicago area. Cannella's immediate superior was Duane Johnson, Nationwide's vice president of operations, who was stationed in Maple Plains. Cannella was terminated on June 30, 1985.

Cannella testified to the following regarding his employment at Nationwide and his ultimate termination. During Cannella's first year at Nationwide, he helped teach Johnson, who had little knowledge of trucking industry basics, about the business. (Cannella Depo. at 35–38) Cannella worked anywhere from 10 to 20 hours per day for Nationwide. (*Id.* at 40) Prior to an injury incurred in March 1985, he never missed a day of work. (*Id.* at 109) Under Cannella's stewardship, the load volume at the Chicago terminal grew from 3 to 125 loads per week, and the terminal had the best profit and loss record in Nationwide's system. (*Id.* at 40, 85) Cannella received several raises during his employment, in-

cluding a $4000 raise in November 1984. (*Id.* at 109, 99–100)

Cannella felt his working relationship with others in the company was good, and he did not recall anyone from Nationwide complaining about his attitude, conduct, or performance. (*Id.* at 215–17; 98, 111, 209) Cannella stated that aside from a dispute over mileage payments for the use of his car, he had no real problems with Johnson. (*Id.* at 51–3)

On March 31, 1985 Cannella injured his back at work while attempting to lift a heavy box. As a result, he missed one week of work. He initially received only a disability payment for that week, which was less than his salary. He then reminded the company that he was part of management and therefore entitled to full salary for six months. Nationwide then paid him the difference between the disability payment and his salary. (*Id.* at 127–30) After that week, Cannella returned to work full time, though he had to leave work to see a doctor two to three times per week. (*Id.* at 210) After Cannella's injury, Johnson or Robert Walker, another Nationwide executive, would call Chicago and ask the other Chicago employees how Cannella walked and looked, and what time he left each day. (*Id.* at 72–73, 212–13) Cannella called Johnson to find out the reason for these inquiries, but received no explanation. (*Id.* at 213)

Approximately one week before Cannella's termination, he spoke with Charlie Piatt, vice president of sales. (*Id.* at 78–9). He told Piatt that the company had not treated him fairly in regard to his request for a car allowance, and that it had lied to him. (*Id.* at 91–2) He also told Piatt that he was going to "get even" with Johnson for denying him a car allowance and for not making him regional sales manager, and planned to file a Worker's Compensation claim. (*Id.; id.* at 198–99).[1]

Cannella does not know who, if anyone, Piatt told about their conversation. (*Id.* at

---

1. Cannella's testimony as to Piatt's response varied slightly. At one point in the deposition, he testified that Piatt had responded, "'Well, that's up to you.'" (Cannella Depo. at 92) At two other points, he stated that Piatt had replied, "'You're entitled to it.'" (*Id.* at 129, 198)

131) Cannella did not tell anyone else at Nationwide about his intent to file a worker's compensation claim until after he had actually filed, which was subsequent to his discharge. (*Id.* at 129, 167) Cannella is not sure who made the decision to terminate him; he thinks it was Johnson as Johnson was his boss. (*Id.* at 143–44) Cannella believes that telling Piatt about his plans to file the worker's compensation claim led to his termination because, in his words, "What other reason could they use? My performance—I had the best terminal and the bottom line in industry is money."[2] (*Id.* at 131–32)

On June 25, 1985, approximately a week after his conversation with Piatt, Cannella was discharged. He was given the news by Robert Walker, who told Cannella that "I had nothing to do with it." When Cannella asked Walker why he had been fired, Walker said he did not know why. (*Id.* at 58–60) About a month after his discharge Cannella talked to Tom Reynolds, who at one time had been in charge of operations. Reynolds also told Cannella that he did not know the reason for the discharge. (*Id.* at 67)

### Discussion

In order to prevail on its summary judgment motion, the moving party must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. F.R.Civ.P. 56(c). Our function at this stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—i.e., whether there is sufficient evidence favoring the nonmoving party for a jury to find in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986). Summary judgment is appropriately granted against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," regardless of whether the moving party supports its motion with evidence which actually negates its opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Traditionally, an at-will employee could be fired for any reason or for no reason at all. Illinois, like many states, has modified that rule.[3] In *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978), the Illinois Supreme Court held that employees may not be discharged in retaliation for asserting their rights under the Illinois Worker's Compensation Act. It subsequently expanded the tort of retaliatory discharge to cover all discharges made for reasons which contravene public policy. *Palmateer v. International Harvester Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981).

Plaintiff claims that he was discharged in retaliation for his stated intent to file a worker's compensation claim. The following are the elements of such a cause of action:

(1) Plaintiff was an employee of defendant prior to his injury;

(2) Plaintiff exercised or threatened to exercise a right granted by the Worker's Compensation Act;

(3) His termination was causally related to the filing of a claim or statement of intent to file a claim under the Act.

*Slover v. Brown,* 140 Ill.App.3d 618, 620–21, 94 Ill.Dec. 856, 488 N.E.2d 1103 (5th Dist.1986); *Horton v. Miller Chemical Co.,* 776 F.2d 1351, 1356 (7th Cir.1985),

---

2. Cannella also testified to the following conversations. A road driver named William Pike told him that he had heard Cannella was fired because he had told Piatt he planned to file for Worker's Compensation. The driver did not indicate the source of his information. Secondly, an office employee named Doris Berg or Jo Schulte told him that Piatt told Johnson that Cannella planned to file for worker's compensation. (*Id.* at 135–40) As we explain in text *infra,* we do not consider this testimony as evidence because it is inadmissible hearsay.

3. Both parties to this diversity suit apparently assume that Illinois law is applicable. "When the parties fail to consider the choice of law in a diversity case, the substantive law of the forum is presumed to control." *Kritikos v. Palmer Johnson, Inc.,* 821 F.2d 418, 421 (7th Cir.1987) (citations omitted). We therefore decide this case under Illinois law.

*cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986). Defendant asserts that Plaintiff has made an insufficient showing on the element of causation—i.e., Defendant's motive or intent—to create a genuine issue for trial. The issue before us, then, is whether Plaintiff has presented sufficient evidence from which a reasonable jury could infer that the reason for Cannella's termination was his statement of intent to file a worker's compensation claim. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

▪ At the outset, we note that though summary judgment regarding issues of motive or intent is frequently inappropriate, it is properly granted where a plaintiff sets forth no facts which support its position. *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir.1986) Even where motive is concerned, "[a]n adverse party responding to a summary judgment motion must set forth specific facts showing there is a genuine issue for trial." *Id.* (citing F.R.Civ.P. 56(e)). Since an at-will employee can be fired for no reason at all, an employer need not show a legitimate reason for discharging an employee unless the employee has put forth sufficient evidence from which a reasonable jury could infer that the discharge was motivated by the exercise of the employee's Worker's Compensation Act rights. *Mercil v. Federal Express Corp.,* 664 F.Supp. 315, 316 (N.D.Ill.1987) (J. Aspen). Thus, we need not consider Defendant's evidence as to why it discharged Cannella unless we find sufficient evidence from which a jury could infer a retaliatory motive.

▪ We believe that no jury could reasonably find that Cannella was terminated because of his stated intent to file a worker's compensation claim. Cannella admitted that he does not know whether Piatt told anyone that Cannella planned to file a claim. (Cannella Depo. at 131) Duane Johnson stated that he was responsible for the decision to fire Cannella, and that neither Piatt nor anyone else told him that Cannella planned to file a claim. (Johnson Aff., Para. 15–16) Piatt stated that he played no role in the decision to terminate Cannella. (Piatt Aff., Para. 6) Thus, there is no evidence that anyone who played a part in the decision to terminate Cannella knew of his intent to file a claim.[4] Such evidence is crucial to Plaintiff's case. *See Mercil,* 664 F.Supp. at 318 (evidence that those responsible for plaintiff's termination knew that he intended to file a worker's compensation claim is "essential" to retaliatory discharge action). As Judge Aspen stated in *Mercil,* where it is lacking plaintiff "would be hard pressed to prove that the motivating factor underlying [defendant's] decision to terminate him was his intent to file a worker's compensation claim". *Id.* Despite this critical evidentiary gap, we proceed now (as Judge Aspen did in *Mercil* ) to consider whether other evidence might be sufficient to support an inference of retaliatory intent.

Plaintiff points to the timing of Cannella's discharge—one week after he told Piatt he intended to file a claim—as evidence of retaliatory intent. However, we find that in the absence of evidence that the decision-makers were aware that Plaintiff intended to file a claim, the timing of the discharge in itself is insufficient to create a genuine issue of fact as to causation. *Cf. Mercil,* 664 F.Supp. at 318 (where no evidence that decision-makers knew of plaintiff's intent to file claim, fact that plaintiff discharged a week before scheduled surgery for injury sustained on job insufficient evidence from which jury could infer retaliatory motive).

Plaintiff would have us read great significance into the fact that after his meeting with Cannella Piatt wrote a memo to Johnson reporting Cannella's threat to " 'get even' " with Johnson and Nationwide and stating that "this matter [is] a serious threat and ... should be handled accordingly." (Piatt Aff. at 2) Plaintiff seems to argue that Piatt's mention to Johnson of a

---

4. Tom Reynolds also participated in the decision to terminate Cannella. (Reynolds Aff. at 7) He stated that Cannella never informed him that he intended to file a claim (*id.* at 8), and there is no evidence that he was otherwise aware of Cannella's intentions prior to the discharge.

"serious threat" constitutes circumstantial evidence that Piatt told Johnson that Cannella had stated his intent to file a worker's compensation claim. However, we simply see no basis from which it can be inferred that Piatt's statement about a "serious threat" referred to anything other than the threat which Piatt specifically stated he informed Johnson of—Cannella's threat to "get even" with Johnson and Nationwide because they had treated him unfairly on his car allowance and lied to him.

We also find that evidence that Johnson and Walker questioned other employees after Cannella's injury as to how Cannella walked and looked and what time he left each day provides little if any support for an inference of retaliatory motive. At most, this evidence shows that Nationwide executives were concerned about Cannella's physical ability to perform his job and possible absenteeism. Under Illinois law, an employer may fire an employee for excessive absenteeism, even if the absenteeism is caused by an injury which is compensable under the Worker's Compensation Act. *Slover v. Brown*, 140 Ill.App.3d 618, 621, 94 Ill.Dec. 856, 858, 488 N.E.2d 1103, 1105 (5th Dist. 1986). Thus, we do not find this evidence probative of retaliatory intent.

Finally, we note that other material in the record which Plaintiff points to as "evidence" supporting an inference of retaliatory intent is inadmissible hearsay and thus cannot properly support its opposition to a summary judgment motion. *See* F.R. Civ.P. 56(e); *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir.1987). Cannella testified that a road driver named William Pike told him that he had heard Cannella was fired because he had told Piatt he planned to file for Worker's Compensation. The driver did not indicate the source of his information. Cannella also stated that an office employee named Doris Berg or Jo

Schulte told him that Piatt told Johnson that Cannella planned to file for worker's compensation. The source of her information is also unknown. (Cannella Depo. at 135–40) Because this inadmissible hearsay "runs against the literal requirements of Federal Rule of Civil Procedure 56(e)," *Friedel*, 832 F.2d at 970, we do not consider it in ruling on Defendant's motion.[5]

After reviewing the evidence before us in the light most favorable to Plaintiff, we cannot find that Plaintiff has presented sufficient evidence from which a reasonable jury could find that Cannella's discharge resulted from his stated intent to file a worker's compensation claim. Therefore, Defendant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

### Conclusion

For the foregoing reason, Defendant's motion for summary judgment is granted.

---

5. We note in regard to the Berg/Schulte double hearsay that an argument could be made that the statement from Piatt to Johnson is being offered only to show the state of mind of the out-of-court declarant, not the truth. As for the statement from Berg or Schulte to Cannella, Plaintiff makes no effort to demonstrate that either employee was authorized to speak for Defendant about the subject. Thus, we cannot conclude that such a statement could even arguably be an admission under F.R.Evid. 801, and we find that the Berg/Schulte hearsay is indeed inadmissible.