998 F.2d 1016
 146 L.R.R.M. (BNA) 2448
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Gerald RICHARDSON, Plaintiff-Appellant,
v.
KRAFT-HOLLEB FOOD SERVICE INCORPORATED, a Division of
Phillip Morris, Incorporated and Chicago Truck
Drivers, Helpers and Warehouse Worker's
Union, Defendants-Appellees.
 No. 91-3557.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 23, 1993.
Decided July 9, 1993.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division, No. 90 C 4446, Marvin E. Aspen, Judge.
 
 ORDER
 
 1
 In this case, Gerald Richardson (plaintiff) filed a two-count complaint in the United States District Court for the Northern District of Illinois against two former employers, Kraft-Holleb Food Service, Inc. (Kraft-Holleb) and Sysco Food Service, Inc. (Sysco) (defendants), and also against the Chicago Truck Drivers, Helpers & Warehouse Worker's Union (Union) (another defendant), of which Richardson was a member. Richardson's claims arise out of his discharge by the employers and the alleged failure of the Union to bring his grievance regarding his discharge to arbitration. In the first count of his complaint, Richardson alleges violations of § 301 of the National Labor Management Relations Act (NLRA), 29 U.S.C. § 185,[1] contending that the Union breached its duty to provide him with fair representation and that both employers violated their respective collective bargaining agreements (CBAs) with the Union by discharging him. In the second count, Richardson asserts a claim for retaliatory discharge against both employers, alleging that he was discharged for exercising his rights under the Illinois Workers' Compensation Act, Ill.Rev.Stat. ch. 48, pp 138.1-138.30 (1989), in violation of Illinois tort law and "the public policy of the State of Illinois." In response to Richardson's complaint, Kraft-Holleb and the Union both filed motions for summary judgment, which the district court granted.[2] Richardson now appeals. For the reasons which follow, we affirm.
 
 I[3]
 
 2
 On May 1, 1989, after Richardson injured his back while working as a Kraft-Holleb truck driver, Kraft-Holleb promptly referred Richardson to Alexian Brothers Medical Center (Alexian) for examination and treatment at the expense of Kraft-Holleb. Richardson was treated intermittently for his injury at that center and elsewhere between May 1 and September 25, 1989. He also timely noted his workers' compensation claim with the Illinois Industrial Commission.
 
 
 3
 On June 20, 1989, Dr. Magee of Alexian informed Kraft-Holleb that none of the tests performed on Richardson were other than negative, and that, if a final neurological exam indicated likewise, Alexian would release Richardson from medical care. Based on a subsequent neurological report of Dr. Reiss to the effect that no objective abnormalities of a neurological type were noted, Richardson was released by Alexian and instructed by Dr. Ortinau of Alexian that he could go back to work on June 26, 1989.
 
 
 4
 Nevertheless, Richardson did not so return to work. Thereafter, by letter of July 6, 1989, Alan A. Cassidy, Kraft-Holleb's District Human Resources Manager, advised Richardson that, unless he returned to work on or before July 10, 1989, he would be discharged. Richardson, however, made no attempt to go back to work until September 25, 1989. Accordingly, he was discharged by Kraft-Holleb.
 
 
 5
 During the relevant period of his employment at Kraft-Holleb, Richardson belonged to the Union. Between termination of his employment by Kraft-Holleb and October 11, 1989, he discussed on several occasions his discharge, his disability, and the filing of a grievance with Union Steward Willie Johnson and Union Representative Gary Hickey. On October 11, 1989, Richardson, in accordance with the Union's collective bargaining agreement (CBA) with Kraft-Holleb, filed a grievance, asserting that his discharge was in violation of the CBA.
 
 
 6
 Union and Kraft-Holleb representatives discussed Richardson's grievance on several occasions. On October 18, 1989, Kraft-Holleb addressed a letter to Hickey, denying the grievance. On October 27, 1989, Kraft-Holleb representatives Cassidy, Ed Knauss, and Rich Rothrock discussed the grievance with Union representatives Hickey and Larry Greenfield as required by the next steps of the grievance procedure set forth in the CBA. During that discussion, Kraft-Holleb again denied Richardson's grievance. As requested by the Union, Kraft-Holleb furnished to the Union records concerning Richardson's medical treatment and his non-return to work.
 
 
 7
 On December 11, 12, and 18, 1989, Cassidy and Hickey again discussed Richardson's grievance, without any change in position by the employer. Union Vice President and General Counsel Paul Glover then requested Richardson to have a "pre-arbitration meeting" with Glover so that the Union could prepare further to process his grievance. Richardson did so meet with Glover twice during January, 1990. To assist the Union in deciding whether to pursue the grievance, Glover made arrangements with an independent arbitrator, Edward Steadman, to review the merits of Richardson's contentions. Steadman, on January 31, 1990, submitted to Glover a written opinion, in which Steadman recommended against the Union instituting arbitration procedures. In the light of Steadman's independent assessment of the low probability of success, the Union determined not to take Richardson's grievance to arbitration.
 
 
 8
 In addition to these undisputed facts stated by the court below, Richardson claims that after his release for work by Alexian, he sought further medical care, principally from Dr. Subbarrao, and that he kept Kraft-Holleb informed as to the medical care he was receiving and as to his medical status and inability to work. He asserts that on July 10, 1989, he had his companion deliver to Kraft-Holleb officials a Certificate of Disability authored by a Dr. Zapeletta.
 
 
 9
 During the pendency of this case in the district court, Glover informed the court that during an early meeting between Richardson and himself, Richardson had admitted to Glover that Richardson was in fact able to return to work on June 26, 1989, but chose not so to do. Richardson denies having ever made such an admission and asserts that Glover did not tell the truth to the district court.
 
 II
 
 10
 "We review [the district court's] decision to grant summary judgment de novo. 'We will only affirm the grant of summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.' In reviewing this grant of summary judgment, we will view the facts in the light most favorable to the plaintiff[ ], the nonmoving party." Ooley v. Schwitzer Div., Household Mfg. Inc., 961 F.2d 1293, 1297 (7th Cir.1992) (citations omitted).
 
 III
 
 11
 As the district court stated, "Richardson's claim that the Union breached its duty of fair representation stems solely from the fact that Glover refused to process Richardson's grievance to arbitration." Richardson v. Kraft-Holleb Food Service, Inc., No. 90 C 4446, slip op. at 4 (N.D.Ill. Sept. 4, 1991). "The Union, however, is under no duty to arbitrate every grievance." Id. (citing Vaca v. Sipes, 386 U.S. 171, 191-92, 87 S.Ct 903, 917-18, 17 L.Ed.2d 842 (1967); Dahnke v. Teamsters Local 695, 906 F.2d 1192, 1196 (7th Cir.1990); Graf v. Elgin, Joliet & Eastern Ry. Co., 697 F.2d 771, 779 (7th Cir.1983) ("A union is not required to prosecute a grievance that it honestly believes lacks merit.")).
 
 
 12
 The Supreme Court in Air Line Pilots Ass'n., Int'l. v. O'Neill, --- U.S. ----, 111 S.Ct. 1127, 1134-35, 113 L.Ed.2d 51 (1991), held that there is a "tripartite standard" governing the duty of fair representation and that "the courts should look to each component separately rather than merging the test into a single requirement of honestly [sic] and good faith. O'Neill, 111 S.Ct. at 1135. The three separate levels of inquiry under this standard are as follows: (1) did the union act arbitrarily; (2) did the union act discriminatorily; or (3) did the union act in bad faith. Id. at 1132-35." Ooley v. Schwitzer Div., Household Mfg. Inc., 961 F.2d 1293, 1302 (7th Cir.1992). The Supreme Court in O'Neill further "stated that the duty of fair representation parallels other fiduciary duties and '[j]ust as these fiduciaries owe their beneficiaries a duty of care as well as a duty of loyalty, a union owes employees a duty to represent them adequately as well as honestly and in good faith.' " Id. (quoting O'Neill, 111 S.Ct. at 1134).
 
 
 13
 Richardson hinges his claim of unfair representation by the Union on the element of bad faith, claiming that the Union's bad faith is evidenced by Glover's statement that Richardson had admitted that he was able to return to work on June 26, 1989, but opted not to do so. As indicated supra, Richardson contends that Glover's said statement is a lie, pointing to Richardson's Local Rule 12(n) statement of facts submitted to the court below,[4] summarizing Glover's deposition testimony. In that Local Rule 12(n) statement, Richardson asserts in pertinent part:
 
 
 14
 He [Glover] used Steadman because he did not believe that the grievance against Kraft had merit and he wanted substantiation; he had already formed the opinion that there was no merit to the Kraft-Holleb grievance before he submitted the matter to Steadman because he had investigated the facts, had met with Richardson on two occasions for approximately 3.5 hours, he did not believe that his grievance had merit because Richardson told him in the first meeting that they had with each other that he was ready to go back to the company when they called him but he chose not go.
 
 
 15
 Richardson takes the position that whether Glover had made up his mind before Glover made arrangements for Steadman's services and whether Glover's statement of what Richardson said to him regarding Richardson's ability to return to work on June 26, 1989, is or is not correct present material issues of factual dispute which bar summary judgment.[5]
 
 
 16
 That contention was specifically rejected by the district court, in these words:
 
 
 17
 ... even accepting the truth of Richardson's contention, no reasonable jury could conclude that Glover's current mistaken belief affected the Union's earlier handling of the grievance. Furthermore, to the extent that Richardson's claim represents dissatisfaction with the Union's assessment of the merits of his grievance, that dissatisfaction is insufficient to survive summary judgment.
 
 
 18
 Richardson, slip op. at 6 (emphasis added). However, Richardson's focus in this appeal seemingly is upon the contention that Glover's memory of what Richardson said is evidence of what Glover was thinking at the time that Glover arranged for Steadman's participation. According to Richardson's Local Rule 12(n) statement of facts, Glover "used Steadman because he did not believe that the grievance against Kraft had merit and he wanted substantiation." Richardson, in that context, claims that the Union breached its duty of fair representation by engaging in "studied ignorance" and by "refus[ing] to obtain and use available material and relevant evidence" to process Richardson's claim. We reject those claims and find lacking in merit Richardson's allegations that Glover's retention of Steadman "was merely a cover-up for Glover's arbitrary refusal to secure the evidence needed to prove the plaintiff's claim in an arbitration hearing." There just is no evidence in the record suggesting that Steadman's opinion, in which Steadman states that he reviewed the entire medical file, was anything but thorough and independent. Thus, even if Glover's statement that Richardson told him that he was able to return to work, but chose not to return, is erroneous, or even a lie on Glover's part, it does not create a material and relevant factual dispute concerning whether the Union's ultimate decision not to bring Richardson's grievance to arbitration was arbitrary, discriminatory, or lacking in good faith. Regardless of Glover's mindset prior to retaining Steadman, there is every indication in the record that Glover intended to give Steadman's opinion great weight and that, in fact, when Glover made his final decision not to arbitrate, he relied heavily on Steadman's opinion. Thus, Richardson has failed to present sufficient evidence to survive summary judgment as to his claim of unfair representation by the Union.
 
 IV
 
 19
 Richardson's claim that Kraft-Holleb violated its CBA with the Union by discharging Richardson also fails. "[F]ederal courts should review allegations that an employer breached a collective bargaining agreement that contains an arbitration clause only when the employee can prove that 'the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance.' " Ooley, 961 F.2d at 1297-98 (quoting Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 566 (1976)). "When a union has exclusive power under a collective bargaining agreement to invoke the grievance process, an employee may pursue an individual claim only if his union wrongfully refuses to process the claim." Dahnke v. Teamsters Local 695, 906 F.2d 1192, 1198 (7th Cir.1990); see also United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 62, 101 S.Ct. 1559, 1563-64, 67 L.Ed.2d 732 (1981) (a demonstration that Union breached its duty of fair representation is an indispensable predicate for an action brought pursuant to § 301 by an employee against an employer for breach of the CBA). As the district court explained, "Since we have concluded that the Union did not wrongfully refuse to arbitrate Richardson's claim, Richardson may not pursue his claim for wrongful discharge under § 301 of the NLRA." Richardson, slip op. at 7.
 
 V
 
 20
 Richardson's claim for retaliatory discharge against Kraft-Holleb, alleging that he was discharged for exercising his rights under the Illinois Workers' Compensation Act (Act), Ill.Rev.Stat. ch. 48, pp 138.1-138.30 (1989), in violation of Illinois tort law and "the public policy of the State of Illinois,"[6] also cannot survive summary judgment.[7] Richardson claims that he was discharged in retaliation for filing a workers' compensation claim and for seeking the care of his own doctors, both of which Richardson had the right to do under the Act.
 
 
 21
 The district court correctly stated the elements which must be proven under Illinois law in connection with a claim of retaliatory discharge and analyzed those elements with respect to the within case:
 
 
 22
 Recovery for the tort of retaliatory discharge requires proof that (1) plaintiff was discharged from employment; (2) in retaliation for his activities; and (3) the discharge violates a clear public policy. Washburn v. IBP, Inc., 910 F.2d 372, 373 (7th Cir.1990); Mercil v. Federal Express Corp., 664 F.Supp. 315, 317 (N.D.Ill.1987); Barr v. Kelso-Burnett Co., 106 Ill.2d 520, 527, 478 N.E.2d 1354, 1358 (1985).
 
 
 23
 There is no dispute that Richardson was discharged from employment by Kraft-Holleb. Further, the Illinois courts have recognized a cause of action when a plaintiff is discharged in retaliation for filing a claim for workers' compensation. McEwen v. Delta Air Lines, Inc., 919 F.2d 58 (7th Cir1990) (interpreting Illinois law); Kelsay [v. Motorola, Inc.], 74 Ill.2d 172, 384 N.E.2d 353 [ (1978) ]. At issue in this case is the evidence of causation, that is, the extent to which Richardson can prove that Kraft-Holleb had a retaliatory motive for firing him. The causation element is not met if the employer has a valid basis, which is not a pretext, for discharging the plaintiff. Mercil, 664 F.Supp. at 317 (citing Slover v. Brown, 140 Ill.App.3d 618, 620-21, 488 N.E.2d 1103, 1105 (5th Dist.1986)).
 
 
 24
 Richardson, slip op. at 8.
 
 
 25
 Richardson points only to the proximity in time of his termination to the filing of his workers' compensation claim to support his allegation that he was discharged in retaliation for filing the claim. Richardson filed his claim for workers' compensation with the Illinois Industrial Commission soon after his injury in May. Though Richardson was released by Alexian for work on June 26, 1989, Kraft-Holleb gave him until July 10, 1989, to return to work and only terminated him when he did not return. Kraft-Holleb did not dispute Richardson's entitlement to workers' compensation benefits for the period that he was authorized to be away from work due to his injury. As the district court concluded, "no reasonable jury could infer that Richardson's termination was improperly motivated." Id. at 9.
 
 
 26
 Richardson, however, claims that he was unlawfully discharged not only for filing a workers' compensation claim, but also for seeking his own medical care upon his release by Alexian. He cites to Ill.Rev.Stat. ch. 48, p 138.8(a), which states in pertinent part: "The employee may at any time elect to secure his own physician, surgeon and hospital services at the employer's expense...." Richardson asserts that he was discharged in violation of that section for seeking further medical care upon his release by Alexian. He further alleges that the doctors at Alexian made an inappropriate medical decision in releasing him for work on June 26, 1989, and that Kraft-Holleb was wrong in expecting him to work, as he was still disabled at that time. He argues:
 
 
 27
 Plaintiff was terminated because he did not buckle under to the demands of his employer but instead exercised his rights under the Worker's Compensation Act in the State of Illinois and sought expert opinion evidence concerning the legitimacy of his claims of disability and further appropriate and proper treatment.... Both [Glover and Cassidy] would require an employee to work in pain or suffer termination if the employee suffers a soft tissue injury and a somewhat protracted period of disabling pain....
 
 
 28
 Appellant's Reply Brief at 21-22.
 
 
 29
 Under Illinois law, "an employer may fire an employee for excess absenteeism, even if the absenteeism is caused by a compensable injury." Hartlein v. Illinois Power Co., 601 N.E.2d 720, 728 (Ill.1992); see also Miller v. J.M. Jones Co., 587 N.E.2d 654, 660 (Ill.App. 4 Dist.1992) ("Medical inability to work is a legitimate nondiscriminatory reason for discharge of an employee, even where that medical inability results from an accident at work.") " 'Illinois allows employers to act on the basis of their employee's physical disabilities; it is only the request for benefits that state law puts off limits as a ground of decision.' " Hartlein, 601 N.E.2d at 728 (quoting McEwan, 919 F.2d at 60). Thus, even if Richardson were correct that he was disabled and could not return to work on June 26, 1989, or on July 10, 1989, Kraft-Holleb was still entirely within its rights under Illinois law to discharge him. The district court correctly concluded:
 
 
 30
 His failure to report back to work until September 25, 1989, indicates either (1) that Richardson was lackadaisical, or (2) that he actually was unable to perform his job. As both circumstances provide an employer with legitimate grounds for discharge, neither standing alone constitute evidence from which a retaliatory intent reasonably may be inferred. Therefore, no genuine issue of material fact exists to support Richardson's claim under the Illinois tort of retaliatory discharge.
 
 
 31
 Richardson, slip op. at 9. Accordingly, summary judgment was appropriately awarded to defendants in connection with both the § 301 and the state law[8] claims of plaintiff. The judgment below is therefore AFFIRMED.
 
 
 
 *
 The Honorable Frank A. Kaufman, Senior District Judge for the District of Maryland, is sitting by designation
 
 
 [1]
 Section 301 provides in pertinent part:
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 
 
 [2]
 In a subsequent order, the district court granted Richardson's motion to dismiss defendant Sysco, since all matters in controversy with Sysco had been resolved. Richardson has not appealed from that decision
 
 
 [3]
 The following summary of the undisputed facts reflect the recitation of facts by Judge Aspen in the court below. Richardson v. Kraft-Holleb Food Service, Inc., No. 90 C 4446, slip op. at 2-3 (N.D.Ill. Sept. 4, 1991)
 
 
 [4]
 Local Rule 12(n) of the United States District Court for the Northern District of Illinois states in pertinent part:
 Motions for Summary Judgment: Opposing Party. Each party opposing a Rule 56 motion shall serve and file, together with opposing affidavits (if any) and other materials referred to in Rule 56(e) and a supporting memorandum of law, a concise response to the movant's statement. That response shall contain ... (2) a statement, consisting of short numbered paragraphs, of any additional facts which require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.
 
 
 [5]
 Kraft-Holleb takes the position that Richardson may not rely on any such statement made by Glover, as Richardson failed to place "on file" in the district court the transcript of Glover's deposition, as specified by Federal Civil Rule 56(c), and instead only summarized the deposition in his Local Rule 12(n) statement. However, in its opinion, the district court referenced such statement as being made to it and took the statement into account. Richardson, slip op. at 6. In that context, there would appear to be no reason why we should not consider it
 
 
 [6]
 Ill.Rev.Stat. ch. 48, p 138.4(h) provides:
 It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.
 It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, to discharge or to threaten to discharge, or to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.
 
 
 [7]
 In this appeal, Richardson also argues, in substance, that the Union is liable under Illinois law for contractual interference with Richardson's employment and for Richardson's retaliatory discharge by his employer because the Union promoted Richardson's termination. Neither of those charges are set forth in the Complaint. Further, Richardson has presented no evidence of the Union's interference or of its promotion of his termination. To the contrary, Glover--and the Union--only became involved after Richardson's termination
 
 
 [8]
 Plaintiff has asserted only federal question jurisdiction. The record does not reveal whether diversity jurisdiction exists. If any pendent jurisdiction exists, it might well have been unnecessary for the district court--or for this Court--to reach plaintiff's state law claim after determining to grant summary judgment against plaintiff upon plaintiff's § 301 claim. See Hardy v. Birmingham Bd. of Educ., 954 F.2d 1546, 1549-50 (11th Cir.1992)