John L. **HOTH** and Maureen Hoth f/n/a Maureen Prondzinski, Plaintiffs,

v.

**AMERICAN STATES INSURANCE COMPANY, a corporation,** Defendant.

**No. 89 C 3658.**

United States District Court, N.D. Illinois, E.D.

Oct. 22, 1990.

Edward J. Whalen, William T. Coleman, Susan M. Langlotz, Hedberg, Tobin, Flaherty & Whalen, Chicago, Ill., for plaintiffs.

J. Robert Geiman, Robert L. Suomala, Michael S. Loeffler, David J. Novotny, William A. Chittenden, Peterson, Ross, Schloerb & Seidel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Plaintiffs, Maureen and John Hoth, have brought this 7 count action against American States Insurance ("ASI") based upon several theories of liability. The first two counts of this complaint allege that Maureen Hoth was discharged in retaliation for her filing of a workers' compensation claim. Counts 3 and 4 are also based on a theory of retaliatory discharge, and allege that John Hoth was terminated as a result of ASI discovering that he intended to testify on behalf of his wife in her workers' compensation action. Counts 5, 6, and 7 are John Hoth's action for defamation in connection with certain statements and internal memorandum concerning John's purchase of a salvage automobile from ASI, and the reasons for his termination. Jurisdiction is based upon diversity of citizenship, and Illinois law will be applied. Defendant now moves for summary judgment on all 7 counts of the complaint.

## FACTS

In August of 1984, Maureen Hoth, an at will employee for ASI, suffered an injury to her back. This injury occurred during the course of her employment with ASI. As a result, Maureen was unable to return to work until October 1, 1984. After returning to work for two weeks, Maureen discovered that due to her prior injury, she was still unable to perform her job. During the period of her disability, Maureen was receiving temporary disability payments under the Illinois Workers' Compensation Act, Ill.Rev.Stat. Ch. 48, § 138.1 et seq. However, in January of 1985, her disability payments were stopped.

Throughout this time period, Maureen was having difficulty receiving her benefits. At one point, the company began proceedings to terminate her. This decision was reversed by Sam Brandon, ASI's director of employee relations, after he received a letter confirming Maureen's continuing disability. Furthermore, the defendant initially balked at paying Maureen's claim under workers' compensation. The defendant insisted on paying Maureen under the company's short term disability program. ("STD"). Although the defendant claims that the action was always treated as a workers' compensation action, it is apparent that ASI preferred that initially she be paid under the STD plan.

In November of 1984, Maureen filed a workers' compensation claim with the Illinois Industrial Commission. In January of 1985, she was examined by an independent doctor, hired by ASI, to determine whether she was able to return to work. His examination revealed that Maureen was in fact able to return to work. There is also evidence that ASI had on file Maureen's doctor's report dated January 31, 1985, which indicated that she was still disabled. The report also brought into question the independent doctor's examination. Nevertheless, during the winter of 1985, ASI made several demands for Maureen to return to work or prove that she was still disabled. According to ASI, these demands were not met and Maureen was terminated in April of 1985.

John Hoth was also an employee at will for ASI. He had worked for the company for 16 years, and his most recent position was Division Claims Manager. He claims to have witnessed the accident that had disabled Maureen.

John had become increasingly unhappy with the way Maureen's claim was being handled. Sometime in December of 1988, he informed his supervisor, Ben Rice, that he had witnessed Maureen's accident and that he would testify on her behalf at her

workers' compensation hearing. Although there is conflicting evidence, it is apparent that at the very least Rice informed him that testifying was not a wise thing for him to do. John Hoth, in his deposition, stated that Rice informed him that if he testified he could be jeopardizing his position with the company.

Around the same time, an investigation was being conducted concerning John's purchase of a salvage automobile from ASI.[1] Sandy Navarro, an investigator employed by the defendant, searched John's office and discovered a claim file for the salvage car purchased by John. She proceeded to write an internal memorandum which John claims contained certain defamatory statements regarding his purchase of the automobile.

In January of 1989, John was terminated. The reason given for this was that he violated company policy when he purchased the salvage automobile. Subsequent to his termination, Ben Rice informed certain employees that John had been discharged because he violated company policy when he purchased the salvage automobile. John claims that this statement was defamatory. According to John, when he questioned Rice about being terminated for purchasing the salvage car, Rice responded that the reasons for his termination go deeper than that.

### DISCUSSION

Defendant moves for summary judgment of all counts under Federal Rule Civ.P. 56. Under this rule, the court must construe the facts most favorably to the nonmovant. The moving party must clearly establish the absence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To counter this, the nonmovant must establish some evidence in which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The plaintiffs bring the first four counts of this action pursuant to a theory of retali-

atory discharge. The first two of these counts are Mrs. Hoth's action based on her dismissal for filing a workers' compensation claim. The first count alleges retaliatory discharge and the second count alleges willful and wanton retaliatory discharge. The court will first address the summary judgment action against Mrs. Hoth's retaliatory discharge claims.

### MAUREEN HOTH'S ACTIONS

■ Illinois has long recognized an employee's right to bring an action for retaliatory discharge, when the discharge is based on that employee's exercise of his rights to file a workers' compensation claim. *Kelsay v. Motorola Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978). The first two counts of this case concern the rather narrow issue of retaliation for the filing of a workers' compensation claim.

In order to successfully maintain this action, the plaintiff must establish three elements:

1. Plaintiff was an employee of the defendant prior to her injury.
2. Plaintiff exercised or threatened to exercise her rights under the workers' compensation act.
3. The termination was causally related to the filing of a claim or stated intent to pursue a claim pursuant to the act.

*Mercil v. Federal Express Corp.*, 664 F.Supp. 315 (N.D.Ill.1987); *Horton v. Miller Chemical Co.*, 776 F.2d 1351, 1356 (7th Cir.1985).

In order for Mrs. Hoth to prevail in this action, she must establish the three elements stated above. Because it is undisputed that she was employed by the defendant prior to her injury, and that she exercised or threatened to exercise her rights under the act, we need only address the third element, causation.

The parties rightfully expend the bulk of their briefs on the issue of whether Mr.

---

**1.** ASI has in its possession certain damaged automobiles that it offers for sale. Under cer-

tain circumstances, an employee can purchase one of these automobiles.

Brandon, the person responsible for Mrs. Hoth's termination, was aware of Mrs. Hoth's pending workers' compensation claim with the Illinois Industrial Commission. It is plainly evident that the plaintiff cannot maintain a retaliatory discharge claim if the person responsible for her termination had no knowledge of the fact that she was pursuing such an action. *Mercil,* 664 F.Supp. at 319. Thus, if Brandon had no knowledge of plaintiff's pending workers' compensation action, there is no question of fact as to causation. On the other hand, if Brandon was aware of plaintiff's pending claim, there may be a question of fact as to whether this knowledge influenced his decision to terminate her.

There is no question that Brandon was aware of Maureen's injuries which occurred in August of 1984. (Brandon Dep. pgs. 21–22). Further, he knew that Mrs. Hoth insisted on workers' compensation benefits as opposed to short term disability benefits. (Brandon Dep. p. 68). There is also no question that Brandon was aware of the fact that Mrs. Hoth was having problems concerning her claims, and that in the fall of 1984 ASI had attempted to terminate her employment. (Brandon Dep. pgs. 21–22). In light of this knowledge, Brandon cannot claim ignorance as to the existence of Mrs. Hoth's initial claims, or the possibility that Maureen may pursue an action with the Illinois Industrial Commission. This action was unique from the very beginning, and Brandon was aware of this fact.

Although Brandon knew of the plaintiff's initial claims, this court is unwilling to conclude, in the absence of some evidence, that Brandon was aware of the plaintiff's workers' compensation claim with the Illinois Industrial Commission, that was filed in November of 1984. To this end, the plaintiff has provided the court with certain memoranda which indicate that Brandon

knew of the pending action. The first is a memorandum dated January 17, 1985 from Robert Ellis to Brandon informing Brandon of Maureen's hearing in front of the Illinois Industrial Commission. In addition, Brandon received a memorandum from Ellis stating that Mrs. Hoth's compensation action had been continued.[2] Construing this evidence in the light most favorable to the plaintiff, this court must conclude that Brandon was apprised of the pending Illinois Industrial Commission hearing.

Having found that Brandon knew of the pending hearing, this court must determine whether a reasonable inference can be drawn that Brandon's decision to fire Mrs. Hoth resulted from her filing of a workers' compensation claim. This court initially notes that questions of motive and intent are not readily reconcilable on motions for summary judgment. *Powers v. Dole,* 782 F.2d 689, 694 (7th Cir.1986). Further, having determined that Brandon was aware of the pending action, this case is distinguishable from the cases cited by the defendant that held there can be no retaliatory discharge because the person responsible for termination had no knowledge of the existence of such a claim. *Mercil,* 664 F.Supp. at 319 ("There is really no dispute that none of the employees charged with responsibility of terminating Mercil or reviewing his dismissal were informed that he was planning to file a permanent disability claim under the workers' compensation act, until after the GFTP was completed.") *Fuentes v. Lear Siegler Inc.,* 174 Ill. App.3d 864, 124 Ill.Dec. 323, 326, 529 N.E.2d 40, 43 (2nd Dist.1988) ("The record, in the instant action clearly indicates that plaintiff had not taken steps to file a claim, nor had he discussed such a claim prior to termination.")

Because of the unique history of Maureen's claims, including ASI's initial reluctance to pay her claim through workers'

---

**2.** Brandon states in his deposition that he did not understand the contents of the memorandum or why he was receiving it. The first sentence of the one page memorandum states, "Sam, attached find copies of letters memos, and etc. on Maureen Prondzinski (Hoth's maiden name) to update your files." The second to

last sentence states, "The workers' compensation action has been continued to 06/17/85." Given the clarity of this memorandum, and Brandon's experience with employment matters, his bald assertion that he did not understand its contents does not raise a contestable issue of fact.

compensation and her threatened termination in the fall of 1984, and Brandon's knowledge of her action with the Illinois Industrial Commission, a reasonable inference can be drawn that Maureen was fired for exerting her rights under the workers' compensation act.

Defendant claims that Mrs. Hoth was terminated for a legitimate reason. ASI asserts that Maureen was terminated because she failed to return to work after an independent physician found that she was able to work. On the other hand, there is evidence that the plaintiff was still injured and unable to return to work and the defendant was aware of this fact. The defendant had a doctor's report in its files which indicated that Mrs. Hoth was still injured and that the independent doctor who examined her did a cursory job. Determining whether or not Maureen was terminated for failing to return to work cannot be resolved on a motion for summary judgment. As the court in *Netzel v. United Parcel Service, Inc.*, 181 Ill.App.3d 808, 814, 130 Ill.Dec. 879, 537 N.E.2d 1348 (1 Dist.1989) stated, "UPS asserts that its articulation of a nondiscriminatory reason for plaintiff's discharge negates a retaliatory motive therefore. The short answer to this argument is that the character of its reason for discharging plaintiff, whether innocent or culpable, was the ultimate question before the jury. By itself, the articulation of an innocent reason for plaintiff's discharge proves nothing." *Id.* at 814, 130 Ill.Dec. 879, 537 N.E.2d 1348. Because a reasonable inference can be drawn that Maureen was terminated for exerting her rights under the act, this court denies defendant's motion for summary judgment on counts 1 and 2.

### JOHN HOTH'S RETALIATORY DISCHARGE CLAIMS

■ Counts 3 and 4 of plaintiffs' complaint are based upon the discharge of John Hoth in retaliation for his assertion of his intention to testify on behalf of his wife in her upcoming workers' compensation action. Count 3 is based on a claim of retaliatory discharge, and count 4 is for willful and wanton retaliatory discharge. Because

John, unlike Maureen, was not terminated for exerting his own rights under the act, this court will employ a more general mode of analysis than that for Maureen's claims. In Illinois, under a general theory of retaliatory discharge, the plaintiff must prove three elements. These elements are 1) discharge 2) in retaliation for his activities 3) violates a clear mandate of public policy. *Hinthorn v. Roland's of Bloomington Inc.*, 119 Ill.2d 526, 529, 116 Ill.Dec. 694, 704, 519 N.E.2d 909, 919 (1988). Although the test is slightly different, the proof necessary for John to defeat plaintiff's motion for summary judgment is exactly the same.

■ As in the previous discussion, the primary issue for this court to determine is one of causation. Did Bazley, the person who terminated John Hoth, act in retaliation to John's assertion of his intention to testify on behalf of his wife. It is apparent that the first element of discharge has been satisfied. Further, the defendant does not argue that terminating an employee for planning to testify at a commission hearing, if true, would violate a clear mandate of public policy. This court would have no hesitation in holding that such a termination would violate a clear mandate of public policy.

As with Maureen's claims, the central issue to be determined is whether Bazley, the person responsible for John's termination, acted without knowledge of John's intention to testify on behalf of his wife. If he had no knowledge of John's intention to testify, it would be impossible to conclude that John was fired in retaliation for his promise to testify for Maureen. On the other hand, if Bazley knew of John's intentions, then there may be a question of fact as to his motivation for firing him. As previously mentioned, summary judgment is generally inappropriate when deciding issues of motive and intent. *Powers v. Dole*, 782 F.2d 689, 694 (7th Cir.1986).

In support of its motion for summary judgment, the defendant contends that there is no evidence that Bazley knew of John's intention to testify. According to the defendant, John was terminated solely

because he violated company policy when he purchased the salvage automobile. Further, the defendant contends that the fact that John was fired around the same time that he revealed his intention to testify is merely a coincidence and by itself does not provide an inference of retaliatory motive. As authority for this proposition, the defendant cites *Cannella v. Nationwide Carriers Inc.*, 687 F.Supp. 362 (N.D.Ill.1988). In *Cannella*, the plaintiff claimed that he was terminated one week after he informed the company vice president of his intention to file a workers' compensation claim. Because the person who fired Cannella had no knowledge of the plaintiff's intention to file a claim, Judge Plunkett held that there was no question of fact as to the reason that the plaintiff was terminated. The court stated:

> Plaintiff points to the timing of Cannella's discharge—one week after he told Piatt he intended to file a claim—as evidence of retaliatory intent. However, we find that in the absence of evidence that the decision makers were aware that plaintiff intended to file a claim, the timing of the discharge in itself is insufficient to create a genuine issue of fact as to causation.

*Id.* at 365.

This court agrees with the reasoning of Judge Plunkett in *Cannella*. The timing of the discharge, standing alone, does not establish a genuine issue of fact as to causation. The plaintiff must demonstrate that the decision maker was aware of John's intention to testify. To this end, the plaintiff has put forth certain evidence which may establish this awareness.

The plaintiff contends that just prior to his termination, he told his supervisor, Ben Rice, that he intended to testify on behalf of his wife. Rice subsequently informed his supervisor, Tom Panion, of his conversation with John. Panion, in his deposition,

recounted the conversation he had with Rice concerning John's decision to testify.

> John said that he was thinking of testifying and posed, in my understanding, as a question to Ben, and Ben responded in a casual manner that that probably wasn't the wisest thing for him to do.

(Panion Dep. p. 83).

John's memory of what Rice told him was a little different than the version gleaned from Panion's deposition. John stated that Rice informed him that his job would be in jeopardy if he testified for his wife. (Hoth Dep. p. 127). In light of either rendition, it would be reasonable for the fact finder to conclude that Rice was warning John not to testify, and if he did, there would be repercussions.

In any event, this does not end our inquiry because this retaliatory intent must be brought home to Bazley, the person responsible for John's termination. The plaintiff claims that during the meeting in which Bazley determined that John should be discharged, both Rice and Panion were present. Furthermore, Bazley admits in his deposition that after John was excused from the meeting, he asked Panion and Rice for their input regarding John's termination. (Bazley Dep. pgs. 89–90). As a result of this meeting, in which Rice played a material role, John was terminated.

This court is persuaded that a reasonable jury could conclude that the decision to fire John was because John was planning to testify on behalf of his wife. This conclusion is certainly not compelled, but it is apparent that the plaintiff has put forth enough evidence to raise a question of fact. Furthermore, the stated reason for John's termination, not following procedures when he purchased a car, appears to be questionable. Although it is clear that there were improprieties associated with the purchase of the car[3], he was the first person who has ever been fired for violating this rule. (Bazley Dep. p. 11). Furthermore, the

---

**3.** Company policy requires that an employee who purchases a salvage automobile must submit a bid in writing, and pay at least 90% of the wholesale value of the car. The uncontroverted evidence reveals that the posting notice on the car had a wholesale price of $5500.00. John paid $3200.00 for the car. This amount is less than 90% of the car's wholesale value and thus violates company policy. The person who sold John the automobile also admits that this was a clear violation of company policy. (Schoeneman Dep. p. 47).

plaintiff has put forth evidence of past violations of company policy concerning the purchase of salvage cars. Although this court cannot determine from the evidence presented whether company policy was violated in the past, it is apparent that there have been questionable car purchase transactions and no one was terminated as a result. These questionable purchases were similar to the transaction made by John. The propriety of the defendant's asserted reason for firing John is a question of fact for the jury to decide. *Netzel,* 181 Ill. App.3d at 812, 130 Ill.Dec. 879, 537 N.E.2d 1348. Because questions of fact remain, the defendant's summary judgment motion on count 3 and 4 are denied.

## JOHN HOTH'S DEFAMATION CLAIMS

The next three counts of his complaint were brought by John Hoth and claim that he was defamed by certain statements made by Ben Rice and by a memorandum written by Sandy Navarro. This court will discuss each allegation separately.

### NAVARRO'S MEMORANDUM

Sandy Navarro was a special investigator employed by ASI. As part of her job, she would investigate certain potentially fraudulent activities that concerned ASI. One of her investigations concerned John Hoth's purchase of a salvage automobile from the company. In furtherance of this investigation, she searched John's office to find a file containing information on the car purchase. After finding the file, she wrote a brief memorandum to her superiors detailing her findings. John now claims that certain allegations in this memorandum were defamatory. These allegations include Navarro's statement that John had placed an invoice in the file to devalue the salvage car he purchased and that infidelities may exist.

The defendant claims that the memorandum written by Navarro was not defamatory because the statements contained in it were true. Further, the defendant contends that if the statements are deemed to be false, Navarro's memorandum is constitutionally protected, or in the alternative

protected under a qualified privilege. Because the third argument, qualified privilege, is compelling, this court need not look at whether the constitution affords protection to these statements or whether they are truthful.

In order to claim a qualified privilege, the defendant must establish five elements. These elements are "good faith by the defendant, an interest or duty to be upheld, a statement limited in its scope to that purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Zeinfeld v. Hayes Freight Lines Inc.,* 41 Ill.2d 345, 349, 243 N.E.2d 217, 221 (1968) quoting *Judge v. Rockford Memorial Hospital,* 17 Ill.App.2d 365, 377, 150 N.E.2d 202, 207 (2nd Dist.1958). The fact that the communication is false does not abrogate the privilege unless actual malice is shown. *Judge,* 17 Ill.App.2d at 380, 150 N.E.2d 202. Furthermore, once it is apparent that the communication is conditionally privileged, it is the plaintiff's burden to prove actual malice which abuses the privilege. *Myers v. Spohnholtz,* 11 Ill.App.3d 560, 569, 297 N.E.2d 183 (1st Dist.1973). Such abuse is found when the publisher does not believe that the communication is truthful or has no basis for believing it to be true. *Id.* at 569, 297 N.E.2d 183. The determination of whether the privilege exists is a question of law for the court. *Skopp v. First Federal Savings of Wilmette,* 189 Ill.App.3d 440, 446, 136 Ill.Dec. 832, 836, 545 N.E.2d 356, 360 (1st Dist.1989).

The first element is that of good faith by the defendant. As indicia of good faith, the court must consider "the face of the report, the occasion on which it was written, conduct of the defendant in connection with the report, and the relationship between the publishers and the recipients." *Spencer v. Community Hospital of Evanston,* 87 Ill.App.3d 214, 220, 42 Ill.Dec. 272, 278, 408 N.E.2d 981, 987 (1st Dist. 1980). It is apparent that this memorandum was written in good faith. Although there may be a question as to why John was terminated, there is no question that the car transaction was suspicious. The

company had every right to make an investigation of this transaction. Therefore, this court finds that plaintiff's statement that the "memorandum was a gratuitous statement written for no purpose other than to defame John Hoth" is wholly without merit. The memorandum was written pursuant to a legitimate investigation and was reported only to her superiors who had a direct interest in the investigation. There is no evidence at all that Navarro acted in bad faith when she wrote the memorandum.

The second element of an interest or duty to be upheld is also satisfied. Navarro was acting in her capacity as an investigator looking into potential infidelities of an employee. She was plainly performing her duties as an investigator and properly reported her findings to her superiors.

The third element, that the statements are limited in scope, is met. Her statements were sufficiently limited to the circumstances surrounding the purchase of the salvage automobile.

Finally, the last two elements have been satisfied. The memorandum was made on a proper occasion, during the course of an investigation; communicated in an appropriate manner, through a confidential memorandum; and submitted to the proper parties, Navarro's superiors involved in the investigation.

Pertaining to the above analysis, the plaintiff only questions two things. First, John contends that Navarro was merely requested to find the file, not comment on its contents. This court cannot understand why a person whose duty is to investigate fraud, should not be able to comment on her investigation. The fact that Navarro was doing her job in a thorough manner does not in any way undermine the claim of privilege. In any event, the plaintiff has not pointed to any part of the record that would convince this court that her function was so limited. In fact, there is evidence that Navarro frequently reported her findings by sending memoranda to her superiors. Plaintiff's second contention is that Navarro's reference to "gambling paraphernalia" found in John's office was be-yond the scope of her investigation. This reference is so ambiguous that it would be difficult to draw any negative connotation therefrom. Such a passing reference cannot in itself be deemed to violate the privilege.

Once the qualified privilege is established, it is the plaintiff's burden to find malice. *Myers*, 11 Ill.App.3d at 569, 297 N.E.2d 183. The plaintiff contends that it was malicious for Navarro to state that John placed an invoice in the file to devalue the car. According to the plaintiff, Navarro had no basis for this allegation and was aware that it was false. There is absolutely no evidence at all that Navarro knew that her statements were false. Furthermore, she had reason to believe that the invoice was put in the file to devalue the car. She had heard an allegation from a former employee that John had paid too little for the car. Furthermore, she had read an internal memorandum that indicated that there had been questionable conduct associated with the purchase of salvage automobiles. In light of these circumstances, there is little question that Navarro drew a reasonable conclusion, and in no way was aware that her statements were false. The fact that she may have been mistaken is irrelevant under these facts.

For the foregoing reasons, this court grants the defendant's motion for summary judgment on count 5.

### RICE'S STATEMENTS

The plaintiff claims that certain statements made by Rice were defamatory and points to two separate statements that form the basis of his claim. Plaintiff first alleges that Rice told Panion and Bazley that plaintiff had concealed his purchase of the salvage car by retaining possession of the salvage file. Plaintiff next alleges that Rice informed several employees in the claim department that plaintiff had been fired for certain improprieties in connection with the purchase of the salvage car.

█ The court will first address the allegedly defamatory statements that Rice

made to Panion and Bazley. The record does not support the allegation in count 6 of the complaint that Rice stated that John had concealed his purchase of the salvage car by retaining possession of the salvage file. The record reveals that Rice had reported that he had located a missing claim file in John's office, that there were irregularities in the file, and that the file had been in John's office for a while. Illinois law allows truth as a defense to a defamation action. *American International Hosp. v. Chicago Tribune Co.*, 136 Ill. App.3d 1019, 1022, 91 Ill.Dec. 479, 483 N.E.2d 965 (1st Dist.1985). To assert this defense, the defendant must show that the statements were published with good motives and for justifiable ends. *Welch v. Chicago Tribune Co.*, 34 Ill.App.3d 1046, 1053, 340 N.E.2d 539 (1st Dist.1975). There is no question that these statements were true. The only statement that could remotely be considered defamatory is the statement that there were irregularities found in the file. As this court has noted, there were irregularities in the file. Furthermore, these statements were clearly published with good motives and for justifiable ends. This court has not questioned the legitimacy of this investigation because it is clear from the record that this was a suspicious transaction and the company had the right to make an investigation. Because these statements were true, this court grants the defendant's motion for summary judgment as to the statements Rice allegedly made to Bazley and Panion.

The next allegation of defamation concerns Rice's statements to certain employees that John was terminated for improprieties concerning the salvage car purchase. After John was terminated, Rice conducted a private meeting to explain to a small number of employees affected by John's termination that John was no longer with the company. In this meeting, Rice stated that John had been terminated, and that his termination concerned certain improprieties in connection with the salvage car purchase. Now John claims that this statement was defamatory.

There is no question that Rice had every right to inform certain employees of John's departure from the company. Rice conducted a very private meeting in which he briefly informed certain affected employees that John had been terminated. This was clearly a legitimate thing for Rice to do. Furthermore, the only cognizable defamatory statements made by Rice were that John had been terminated and that he had acted improperly in connection with the salvage car purchase. The plain fact of the matter is that John was terminated and that he had been involved in a questionable transaction. Both of these statements were true. Truth is a defense to a claim of defamation. *American International Hospital*, 136 Ill.App.3d at 1022, 91 Ill.Dec. 479, 483 N.E.2d 965. The fact that there may have been more to the termination than Rice revealed is not relevant. Even if it was not the real reason why he was terminated, it was true that he had been terminated and had acted improperly. Rice was well within his rights to tell certain employees about the suspicious transaction. Those employees would draw the same conclusions from this revelation whether or not it was in connection with his termination. The impact of this statement was clearly limited to John's involvement in a suspicious transaction, and the fact of the matter is that he was involved. Even if it were not the reason for his termination, a lie is not necessarily defamatory.

For the foregoing reason this court grants defendant's motion for summary judgment on count 6.

The final count in this summary judgment motion concerns the plaintiff's defamation per quod claim. In this claim, the plaintiff has incorporated the allegations of defamation found in counts 5 and 6. Because this court has already found that there is no question of fact as to count 5 and 6, the court also dismisses count 7.

For the foregoing reasons, this court denies the defendant's motion for summary judgment as to counts 1, 2, 3, and 4, and grants the motion as to counts 5, 6, and 7.